**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Marilyn Kelly        Michael F. Cavanagh
                     Elizabeth A. Weaver
                     Maura D. Corrigan
                     Robert P. Young, Jr.
                     Stephen J. Markman
                     Diane M. Hathaway

FILED JULY 15, 2010

STATE OF MICHIGAN

SUPREME COURT

JEFFREY HENDEE, MICHAEL HENDEE,
LOUANN DEMOREST HENDEE, and
VILLAGE POINTE DEVELOPMENT LLC,

Plaintiffs-Appellees,

v                                            Nos. 137446 and
                                                     137447

PUTNAM TOWNSHIP,

Defendant-Appellant.

BEFORE THE ENTIRE BENCH

WEAVER, J.

In this zoning case, Putnam Township (1) denied plaintiffs' request to rezone a 144-acre parcel from agricultural-open space (A-O) use to single-family, rural residential (R-1-B) use, (2) denied a request for a planned unit development (PUD) that would have permitted R-1-B development of the parcel and, (3) denied a use variance that would have permitted residential development of up to 95 lots. In light of these circumstances, we consider whether the trial court had jurisdiction to entertain a claim of exclusionary

zoning and grant relief that would allow plaintiffs to use the property for a 498-unit manufactured housing community (MHC).

Plaintiffs' exclusionary zoning claim was premised on the notion that because the township's zoning map classified no appropriate land for MHC use and the township's master plan designated only unsuitable property for that use, the township's ordinance was facially invalid. The trial court agreed with plaintiffs and granted relief on the basis of a finding that the township had engaged in exclusionary zoning and that MHC development was an appropriate use of plaintiffs' property.

On appeal, the Court of Appeals majority affirmed in part. Concluding that plaintiffs had presented an apparently "facial" challenge to the constitutionality of the ordinance[1] because it did not include MHC development,[2] the majority also determined that plaintiffs had presented an "as applied" challenge to the constitutionality of the ordinance. The majority found it unnecessary to determine whether the exclusionary zoning claim presented a facial challenge and whether it was subject to the rule of finality, however, "holding that further township proceedings would have been futile

---

[1] The majority described it as a "facial challenge with 'as applied' attributes or features, considering that execution of the ordinance scheme with respect to a recognized yet unapplied MHC district can go the issue of whether the township engaged in exclusionary zoning." *Hendee v Putnam Twp*, unpublished opinion per curiam of the Court of Appeals, issued August 26, 2008 (Docket Nos. 270594 and 275469), p 6 n 6.

[2] The partial dissent would have held that plaintiffs' claim was not ripe for judicial review. *Id*., unpub op at 1 (DONOFRIO, P.J., concurring in part and dissenting in part).

assuming application of the rule."[3]  The as-applied challenge was not subject to finality and ripeness requirements because, in light of the township's denial of plaintiffs' applications to rezone the property for a lower-density residential use, it would have been futile for plaintiffs to apply for approval of a 498-unit MHC.

We conclude that the trial court and the Court of Appeals majority (1) erred to the extent that they held that the township zoning ordinance was facially invalid because it unconstitutionally excluded a lawful use (MHC) and (2) erred by holding that the futility exception excused compliance with the finality rule and that the appropriate remedy was to enjoin the township from interfering with plaintiffs' development of a 498-unit MHC. An ordinance is not facially invalid merely because it does not authorize every conceivable lawful use, nor does a zoning authority's denial of an application for residential rezoning at a proposed lower-density level automatically establish that it would be futile for the property owner to apply for a higher-density use, such as MHC rezoning or a variance allowing MHC use. Because plaintiffs never submitted an application to the township for MHC rezoning or for a use variance that permitted construction of an MHC, plaintiffs' claim was not ripe for judicial review.[4]

## I. FACTS AND PROCEDURAL BACKGROUND

Plaintiffs Jeffrey Hendee, Michael Hendee, and Louann Demorest Hendee own a 144-acre tract of land, formerly used as a dairy farm, in defendant Putnam Township.

---

[3] *Id.*, unpub op at 5-6 (majority opinion).

[4] *Paragon Props Co v City of Novi*, 452 Mich 568, 576; 550 NW2d 772 (1996).

The land is essentially undeveloped, consisting of flat lands, hills, wetlands, and woods. The land was and is currently zoned A-O, which permits development as a farm or 10-acre single-family homes. The parties stipulated that the surrounding property to the east and south is zoned for agricultural use, that the property to the west is zoned for agricultural and medium-acreage residential estate use, and that the property is bordered on the west by a paved road and on the south by a gravel road. The township has no public water or sanitary-sewer service.

Some years before the proceedings in this case, the Hendees had stopped using the land as a dairy farm because it was unprofitable. In 2002, they attempted to sell the land, intending to use the proceeds to fund their retirements, but they concluded that they could not get an acceptable price for the land because the A-O zoning classification limited its development potential. Plaintiff Village Pointe Development LLC agreed to purchase and develop the land, contingent on the property being rezoned from A-O to R-1-B.

On August 29, 2002, the Hendees filed an application with the Putnam Township Planning Commission to rezone their land from A-O to R-1-B. The township planning commission recommended denial of the rezoning application, but the Livingston County Planning Commission recommended approval with conditions, specifically, that cluster or PUD development be considered to protect the parcel's wetlands.

On April 23, 2003, the Hendees filed an application with the township for approval of a 95-unit PUD and rezoning to R-1-B. The township planning commission recommended denial of the application, and in May 2003 the county planning commission also recommended denial.

4

Following these denial recommendations, the Putnam Township Board remanded the application to the township planning commission for specific findings of fact. The planning commission held a hearing and presented its findings supporting denial, supplemented by letters from the township's community planner and consulting engineers, to the township board in December 2003. On December 17, 2003, the township board denied both the rezoning request and the application for the 95-unit PUD/R-1-B on the basis of the planning commission's findings.

The Hendees next applied to the township zoning board of appeals (ZBA) for a use variance to permit development of up to 95 one-acre residential lots on their land. Following hearings in February and March 2004, the ZBA denied the Hendees' variance request on March 22, 2004.

Although it is unclear when it occurred, at some point during the application process concerning the 95-unit PUD/R-1-B, the Hendees filed a new application to rezone the property to permit MHC development. The Hendees withdrew that application, however, after the township informed them that it would not process a new application for an MHC while the 95-unit PUD application was still pending.

On April 12, 2004, the Hendees, together with the proposed buyer/developer, Village Pointe, filed a complaint against the township, alleging that the refusal to rezone the property from A-O zoning to allow MHC development deprived plaintiffs of equal protection and substantive due process and constituted an unconstitutional taking and

further alleging that the township's zoning was exclusionary, in violation of former MCL 125.297a,[5] because it excluded MHC zoning.

Importantly, plaintiffs abandoned the 95-unit PUD as "economically unfeasible." Instead, they based their claim for injunctive relief prohibiting enforcement of the A-O zoning of their property on their earlier (withdrawn) request to rezone the property for an MHC,[6] asking that the court enjoin the township from interfering with plaintiffs' development of a 498-unit MHC. On May 5, 2006, after a nine-day bench trial during January and March 2006, the trial court found in plaintiffs' favor on all claims and granted an injunction prohibiting the township from interfering with development of the MHC. The trial court also awarded costs and expert witness fees to plaintiffs.

The township appealed and, in an unpublished, split decision, the Court of Appeals affirmed the trial court's judgment enjoining the township from enforcing its A-O zoning and from interfering with plaintiffs' MHC development.[7] The majority reversed in part with respect to the as-applied constitutional claims (equal protection, substantive due process, and taking). Although the majority ruled that the claims were subject to the rule of finality but should not have been dismissed on that ground under the

---

[5] MCL 125.297a was part of the former Township Zoning Act. 2006 PA 110 repealed that act and other zoning statutes and replaced them with the Michigan Zoning Enabling Act, MCL 125.3101 *et seq.*, effective July 1, 2006. MCL 125.3702(1). The Township Zoning Act, however, applies to this case. MCL 125.3702(2).

[6] Again, we note that plaintiffs never re-presented their application for a 498-unit MHC to the township for review after the township informed plaintiffs that it could not consider a new application while their 95-unit PUD application was still pending.

[7] *Hendee*, unpub op at 23-24.

futility exception to that rule, it also concluded that those claims failed on the merits because the township "was advancing a legitimate governmental interest in maintaining the A-O classification," it was "not acting arbitrarily or capriciously," and "all avenues of use, and thus economic feasibility, were not explored and negated."[8] The majority affirmed the trial court's ruling on plaintiffs' exclusionary zoning claim, however. The majority found it unnecessary to decide whether it was a facial claim that was not subject to the rule of finality. Instead, "assuming the contrary, the futility exception applied; the claim was ripe for suit."[9] The majority implied that plaintiffs were free to pursue their exclusionary zoning claim because the ordinance unconstitutionally excluded a lawful use (MHC). The majority reasoned that, in light of the township's denial of plaintiffs' request for far less intensive residential rezoning (the PUD) and use variance applications, it would have been fruitless for plaintiffs to seek MHC rezoning or a variance permitting MHC use of the property at the much higher density they proposed. Relying on *Schwartz v City of Flint*, 426 Mich 295, 329; 395 NW2d 678 (1986), the majority concluded that the use plaintiffs proposed was reasonable and affirmed the trial court's order enjoining the township from interfering with it.[10] The majority also affirmed the award of costs and expert witness fees to plaintiffs.

---

[8] *Id.* at 23.

[9] *Id.*

[10] *Id.* at 18-20, 23-24.

Judge DONOFRIO concurred in part and dissented in part. He agreed that plaintiffs' as-applied claims were not ripe, but also thought that the trial court's ruling on the exclusionary zoning claim should be reversed because it was not ripe for judicial review and because plaintiffs had not established, pursuant to former MCL 125.297a, that a demonstrated need for MHCs existed in the township, a question that the majority had found unnecessary to decide because it believed the futility doctrine rendered such analysis unnecessary.

Defendant applied for leave to appeal, and we granted leave and requested that the parties brief the following issues:

> (1) whether a rule of finality or ripeness applies to the plaintiffs' exclusionary zoning claim, see *Paragon Props Co v City of Novi*, 452 Mich 568, 576 (1996); *Warth v Seldin*, 422 US 490, 508 n 18 [95 S Ct 2197; 45 L Ed 2d 343] (1975) ("[U]sually the focus should be on a particular project."); (2) if so, whether the Court of Appeals majority properly held that the defendant township's previous denials of the plaintiffs' applications to rezone their property for less intensive uses excused the finality requirement under the futility doctrine; (3) whether the trial court erred in granting injunctive relief prohibiting the defendant township from interfering with the plaintiffs' proposed use of their property for a manufactured housing community when the plaintiffs had never proposed that use to the township, see *Schwartz v City of Flint*, 426 Mich 295, 327-328 (1986); (4) whether a claim that a zoning ordinance unconstitutionally excludes a lawful use is properly analyzed without regard to whether a demonstrated need for the use exists, as suggested by the Court of Appeals' reliance on *Kropf v Sterling Hts*, 391 Mich 139, 155-156 [215 NW2d 179] (1974), or whether the enactment of 1978 PA 637, MCL 125.297a (now recodified in nearly identical language as MCL 125.3207) superseded the analysis of *Kropf* on which the majority relied; and (5) whether the trial court abused its discretion in awarding the plaintiffs their costs and expert witness fees.[11]

---

[11] *Hendee v Putnam Twp*, 483 Mich 983 (2009).

## II. STANDARDS OF REVIEW

This Court reviews de novo issues of law.[12] We review a trial court's findings of for clear error.[13]

## III. ANALYSIS

## A. LEGISLATIVE ZONING POWER

The zoning of land is an exercise of a government's police power.[14] For more than 80 years, courts have adhered to the analysis in *Village of Euclid v Ambler Realty Co*.[15] There, the United States Supreme Court recognized that the pressures of competing land uses require the segregation of incompatible uses, consistent with the public interest in protecting and preserving property values. In accordance with *Euclid*, various zoning acts, including the former Township Zoning Act, MCL 125.271 *et seq.*, were adopted to establish procedures for Michigan governmental bodies to enact and enforce zoning ordinances.

Pursuant to that statute, Putnam Township enacted a zoning ordinance and adopted a zoning map.[16] Legislative bodies such as the Putnam Township Board also have the authority to amend zoning maps by granting rezoning requests and special use permits.

---

[12] See *Odom v Wayne Co*, 482 Mich 459, 467; 760 NW2d 217 (2008).

[13] *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009).

[14] See *Paragon*, 452 Mich at 577.

[15] *Village of Euclid v Ambler Realty Co*, 272 US 365; 47 S Ct 114; 71 L Ed 303 (1926).

[16] Former MCL 125.281; see *Paragon*, 452 Mich at 574; cf. MCL 125.3401.

In addition, a landowner may seek a use variance to permit a use in a zoning district that otherwise would not be permitted.

## B. PLAINTIFFS' REZONING REQUEST

Plaintiffs' land was zoned for agricultural use, which limited the development of single-family homes on plaintiffs' property to 10-acre parcels. Accordingly, plaintiffs initially filed a request to rezone their property from A-O to R-1-B. Upon the recommendation of the Livingston County Planning Commission, plaintiffs reformulated their request, seeking to proceed with a 95-unit PUD.

After the township denied plaintiffs' request for a 95-unit PUD, plaintiffs properly sought administrative relief by requesting a use variance from the ZBA to permit the 95-unit PUD. The ZBA denied plaintiffs' variance request. At that point, plaintiffs had exhausted their administrative review obligations and could have sought judicial relief under the ripeness rule of *Paragon Props Co v City of Novi*, 452 Mich 568; 550 NW2d 772 (1996), as no other means of administrative appeal or review was available to plaintiffs to permit development of a 95-unit PUD.

However, after the township reached its final decision denying the 95-unit PUD, plaintiffs did not seek judicial review of the ZBA's denial of their request for a variance to develop a 95-unit PUD. Instead, they filed a complaint in the circuit court alleging that the township had wrongfully engaged in exclusionary zoning by enacting an ordinance

10

that did not, on its face, permit *development of a 498-unit MHC* on plaintiffs' property.[17]

Thus, the township was never afforded an opportunity to review a rezoning request for a 498-unit MHC because the only applications before the township were the requests to rezone the property for residential development or *development of a 95-unit PUD* or for a use variance that would allow residential development.

The township responded that it had reached a final decision only with respect to the rezoning request before it: the request for the 95-unit PUD. The township had no

---

[17] A facial challenge is one in which the complainant alleges that the very existence of a zoning ordinance or decision adversely affects and infringes upon the property values of the rights of all landowners within the governed community. *Paragon*, 452 Mich at 576. Specifically, plaintiffs alleged that because there was no provision for MHC zoning in the township's zoning ordinance, the ordinance wrongfully precluded all landowners from using their land for MHCs. Consequently, in making a facial challenge, plaintiffs must establish that there is no set of circumstances in which the ordinance would be valid. *Warshak v United States*, 532 F3d 521, 529 (CA 6, 2008). In this regard, plaintiffs sought to frame their complaint as a facial claim challenging the constitutionality of the township's ordinance on the basis that the ordinance wrongfully denies all property owners the right to develop their land for MHC use and is therefore exclusionary.

An as-applied challenge is one in which the complainant alleges that the individual landowner suffers from a specific and identifiable injury as a result of the township's zoning ordinance or decision. *Paragon*, 452 Mich 576. An as-applied challenge is always subject to the rule of finality—the requirement that the governing body has made a definitive decision such that an identifiable injury can be shown. An as-applied challenge is not ripe for judicial review until the complainant can establish that a final decision injures a complainant. *Id.* at 576-577. By contrast, the rule of finality does not apply to true facial challenges because such challenges attack the very existence of the ordinance or decision. *Id.* at 577. We agree with the Court of Appeals majority that this case "reflects a facial challenge with 'as applied' attributes or features, considering that execution of the ordinance scheme with respect to a recognized yet unapplied MHC district can go to the issue of whether the township engaged in exclusionary zoning." *Hendee*, unpub op at 6 n 6. We disagree, however, with its conclusion that, under these circumstances, plaintiffs were excused from complying with the finality requirement.

11

rezoning request pertaining to development if a 498-unit MHC upon which to make any decision, much less a final decision appealable in the circuit court. Accordingly, the trial court had no authority to review plaintiffs' complaint alleging that the township's ordinance was a facially invalid exercise in exclusionary zoning because the ordinance did not permit plaintiffs to develop an MHC.

We conclude that the trial court erred by deciding plaintiffs' exclusionary zoning claim because plaintiffs did not first submit a request to rezone their property for MHC use. The township could not even consider, much less render a final decision with regard to, the proposed 498-unit MHC use because it had no such application before it.

## C. *PARAGON PROPS CO v CITY OF NOVI*

Under *Paragon*, a plaintiff's complaint is not ripe for judicial review until the zoning authority has reached a final decision and the plaintiff has exhausted every administrative appeal. Without a final decision from the zoning authority, a plaintiff cannot demonstrate that the zoning ordinance or decision specifically injured the plaintiff.

In *Paragon*, this Court addressed whether the Novi City Council's denial of plaintiff Paragon Properties Company's request to rezone its property was a final decision appealable in the circuit court. Paragon owned a 75-acre vacant tract of land that was zoned for large-lot, single-family residential use. The property in Novi, Michigan, abutted an active gravel pit operation to the west, and the land north of the property was zoned for industrial use. To the east of the Paragon tract, the undeveloped property was

zoned for residential use, and to the west, the property was developed for mobile-home use.

Paragon applied to the planning board of the city of Novi to rezone the property from single-family residential to mobile-home use. Both the planning board and the Novi City Council denied Paragon's request. Paragon then filed a complaint in the Oakland Circuit Court, alleging that the property had no economic value as zoned for residential use because of adjacent industrial uses and poor drainage conditions. Paragon argued that the highest and best use of the property would be for mobile-home use and thus the city's denial of its rezoning request unconstitutionally deprived Paragon of its property, in violation of the Due Process Clause.

The city moved for summary disposition, arguing that because Paragon had failed to first seek a use variance, Paragon had not obtained a final decision regarding the permissible uses of the property under the Novi ordinance. The trial court denied the motion, concluding that Paragon had exhausted all its administrative remedies because the case concerned a request for rezoning, not a request for a use variance. Thereafter, the trial court held that the zoning ordinance as applied to Paragon's property was an unconstitutional taking and entered a judgment against the city.[18]

---

[18] As noted earlier, we stated in *Paragon* that as-applied challenges are distinct from facial challenges:

> Although the police power allows the government to regulate land use, the Fifth Amendment requires that compensation be paid if a government regulation unreasonably shifts social costs to an individual or individuals. *Village of Euclid*, [272 US] at 387. A claim for compensation

On appeal, the Court of Appeals reversed the trial court, holding that Paragon's claim was not ripe for judicial review because Paragon had neither sought a variance nor brought an inverse condemnation action.[19]

Citing the United States Supreme Court's opinion in *Williamson Co Regional Planning Comm v Hamilton Bank of Johnson City*,[20] as well as this Court's express adoption of *Williamson* in *Electro-Tech, Inc v H F Campbell Co*,[21] we observed in

> may allege that an ordinance is confiscatory "as applied" or "on its face." A facial challenge alleges that the mere existence and threatened enforcement of the ordinance materially and adversely affects values and curtails opportunities of all property regulated in the market. *Id* at 395. An "as applied" challenge alleges a present infringement or denial of a specific right or of a particular injury in process of actual execution. *Id*.

> A challenge to the validity of a zoning ordinance "as applied," whether analyzed under 42 USC 1983 as a denial of equal protection, as a deprivation of due process under the Fourteenth Amendment, or as a taking under the Just Compensation Clause of the Fifth Amendment, is subject to the rule of finality. [*Paragon*, 452 Mich at 576, citing *Lake Angelo Assoc v White Lake Twp*, 198 Mich App 65, 70; 498 NW2d 1 (1993), citing *Williamson Co Regional Planning Comm v Hamilton Bank of Johnson City*, 473 US 172, 186; 105 S Ct 3108; 87 L Ed 2d 126 (1985).]

As discussed, however, it does not follow that every ostensibly "facial" challenge is exempt from the rule of finality. Rather the court must look to the substance of the claim and the factual matrix in which it is presented to determine whether the claim is one that is exempt from *Paragon*'s rule of finality.

[19] *Paragon Props Co v City of Novi*, 206 Mich App 74, 76; 520 NW2d 344 (1994).

[20] *Williamson*, n 17 *supra*.

[21] *Electro-Tech, Inc v H F Campbell Co*, 433 Mich 57, 81-91; 445 NW2d 61 (1989).

*Paragon* the importance of requiring finality in land-use-regulation disputes.[22]   In *Williamson*, a property owner received temporary approval from the planning commission to develop a residential subdivision.  When the commission subsequently amended its ordinance, thereby denying the property owner his preferred use, the owner sued in federal district court, alleging that the ordinance amounted to an unconstitutional taking of his property.  The United States Supreme Court disagreed, holding that because the landowner had failed to first seek alternative relief by requesting a land use variance, the landowner's claim was not ripe for judicial review.[23]

Consistently with *Williamson*, we held in *Paragon* that judicial review in zoning cases is not available until the zoning authority has rendered a final decision.[24]   Thus, because Paragon had not first sought a use variance, it had not established that its claim was ripe for judicial review:

> The City of Novi's denial of Paragon's rezoning request is not a final decision because, absent a request for a variance, there is no information regarding the potential uses of the property that might have been permitted, nor, therefore, is there information regarding the extent of the injury Paragon may have suffered as a result of the ordinance.  While the city council's denial of rezoning is certainly a decision, it is not a final decision under *Electro-Tech* because had Paragon petitioned for a land use variance, Paragon might have been eligible for alternative relief from the provisions of the ordinance.  [*Paragon*, 452 Mich at 580.]

---

[22] *Paragon*, 452 Mich at 577-578.

[23] *Williamson*, 473 US at 193-194.

[24] *Paragon*, 452 Mich at 576-577.

15

D.  APPLICATION OF *PARAGON*

As there was no decision regarding plaintiffs' proposed use of the property for a 498-unit MHC, plaintiffs' complaint did not allege that any final decision by the township precluded plaintiffs from making MHC use of their property.  MHC use was contemplated by the township's master plan, though not yet specifically zoned for in the township.  Plaintiffs' failure to seek rezoning of their property for MHC development denied the township any opportunity to assess plaintiffs' MHC proposal and arrive at a definitive decision from which the court could determine whether plaintiffs had sustained any actual or concrete injury.  Consequently, plaintiffs have not exhausted their administrative remedies, the township has rendered no final decision, and plaintiffs' exclusionary zoning claim is not ripe for judicial review.  As this case can be resolved on this narrower ground, we need not and do not address the substance of plaintiffs' exclusionary zoning claim.

Whereas the *Paragon* Court held that Paragon's failure to obtain a final decision from the Novi Zoning Board of Appeals precluded Paragon from seeking judicial review, in the case now before us, plaintiffs' claim for relief is not only not ripe for review, it is nonexistent.  Simply put, plaintiffs' failure to submit an application to rezone its property to permit an MHC effectively denied the township any opportunity to consider whether that alternative use of the land would be acceptable.  As Judge DONOFRIO observed, it also deprived the township of any opportunity to consider whether its ordinance failed to accommodate a lawful use for which a demonstrated need existed within either the

16

township or the surrounding area.[25]  In the absence of an express prohibition of a lawful land use within the ordinance itself,[26] the issue of the ordinance's exclusionary effect, or the absence of it, will not be ripe for consideration by the courts until the township has been afforded the opportunity to make that determination.

In response, plaintiffs argue that it would have been futile to seek permission to develop a 498-unit MHC because the township had already denied its rezoning request for a less intensive use—the 95-unit PUD.  The Court of Appeals majority agreed, noting that under the futility doctrine, a court will not require parties to exhaust all administrative remedies.[27]  If a plaintiff can show that it would be futile to first exhaust

---

[25] *Hendee*, unpub op at 8 (DONOFRIO, P.J., concurring in part and dissenting in part).  See former MCL 125.297a, which provided:

> A zoning ordinance or zoning decision shall not have the effect of totally prohibiting the establishment of a land use within a township in the presence of a demonstrated need for that land use within either the township or surrounding area within the state, unless there is no location within the township where the use may be appropriately located, or the use is unlawful.

A comparable provision, MCL 125.3207, appears in the Michigan Zoning Enabling Act.

[26] As previously noted, the township's master plan contemplates MHC use.  The master plan currently projects that MHCs will be located on land adjacent to the village of Pinckney, which has the only available public water and sewer.  Plaintiffs alleged that the land designated was unsuitable for MHC use, but, by failing to apply for MHC rezoning, they denied the township any opportunity to consider that claim.

[27] The majority observed:

> [T]his Court has stated that it will not require parties to undertake vain and useless acts, and where it is clear that further administrative proceedings would be an exercise in futility and nothing more than a formal step on the way to the courthouse, resort to the administrative body is not

all administrative appeals, because it can be established that the zoning authority's decision would remain the same on appeal, courts have held that the futility doctrine excuses the requirement of ripeness.

As the United States Court of Appeals for the Sixth Circuit explained in *Bannum, Inc v City of Louisville*, 958 F2d 1354, 1362-1363 (CA 6, 1992):

> We do not want to encourage litigation that is likely to be solved by further administrative action and we do not want to put barriers to litigation in front of litigants when it is obvious that the process down the administrative road would be a waste of time and money. . . .
>
> . . . [However,] [f]or the exception to be available to an aggrieved landowner, the landowner must have submitted at least one "meaningful application" for a variance from the challenged zoning regulations. *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1454-55 (9th Cir. 1987), *cert. denied*, 484 U.S. 1043, 108 S.Ct.775, 98 L.Ed.2d 861(1988).

Because plaintiffs have not even made at least one unsuccessful meaningful application for a rezoning request to change the zoning from AO to MHC, so as to permit their proposed 498-unit MHC, plaintiffs have not established that the futility doctrine applies.

Relying on the discussion of the requirement of finality in the context of a taking claim in *Paragon*, 452 Mich at 578-579, plaintiffs, the trial court, and the Court of Appeals majority appear to have proceeded on the assumption that *Paragon*'s ripeness and finality rules can never apply to an ostensibly "facial" attack on a zoning ordinance, i.e., one premised on an exclusionary zoning theory. They are mistaken, as even a cursory examination of the statute on which the trial court relied reveals. Precisely

---

mandated. *L & L Wine & Liquor Corp v Liquor Control Comm*, 274 Mich App 354, 358; 733 NW 2d 107 (2007); *Turner v Lansing Twp*, 108 Mich App 103, 108; 310 NW2d 287 (1981). [*Hendee*, unpub op at 6-7 n 7.]

because the statute prevents a "zoning *ordinance* or *zoning decision*" from "hav[ing] the effect of totally prohibiting the establishment of a land use within a township *in the presence of a demonstrated need for that land use within either the township or surrounding area within the state*," former MCL 125.297a (emphasis added), the zoning authority must first be afforded the opportunities (1) to determine the effect of its ordinance in light of evidence demonstrating a need for the proposed land use and (2) to render a zoning decision based on that evidence before a facial exclusionary zoning claim can become ripe for judicial review.

As the United States Supreme Court observed in *Warth v Seldin*, 422 US 490, 508; 95 S Ct 2197; 45 L Ed 2d 343 (1975):

> We hold only that a plaintiff who seeks to challenge exclusionary zoning practices must allege specific, concrete facts demonstrating that the challenged practices harm *him*, and that he personally would benefit in a tangible way from the court's intervention. Absent the necessary allegations of demonstrable, particularized injury, there can be no confidence of "a real need to exercise the power of judicial review" or that relief can be framed "no broader than required by the precise facts to which the courts ruling would be applied." *Schlesinger* v. *Reservists to Stop the War*, 418 U.S. [208], at 221-222 [94 S Ct 2925; 41 L Ed 2d 706 (1974)].

In *Warth*, the plaintiffs were individuals and organizations residing in Rochester, New York. They brought a class action against the town of Penfield, New York, and its officials, alleging that the town's zoning ordinance unconstitutionally excluded low- and moderate-income persons from living in Penfield. The federal district court dismissed the plaintiffs' suit, and the United States Court of Appeals for the Second Circuit affirmed. On appeal, the United States Supreme Court again affirmed the decision after a majority of the justices concluded that the plaintiffs lacked standing to sue because none

19

of the individual plaintiffs could allege a particular injury to themselves. Nor did the plaintiffs demonstrate that judicial intervention could benefit them in a tangible way. In this respect, the *Warth* Court held that the plaintiffs' facial claim alleging exclusionary zoning was not ripe for judicial review.

As Judge DONOFRIO observed in dissent in this case, every use is not appropriate to every community, and Mackinac Island's zoning (for example) is not necessarily unconstitutionally (or, under a statute like former MCL 125.297a, unlawfully) exclusionary because it does not include industrial use classifications or zone particular property for such uses.[28]

The township denied the only applications that plaintiffs submitted, requests to rezone the property from A-O to R-1-B to permit residential development (or, alternatively, to permit a 95-unit PUD) or for a use variance. Plaintiffs' decision not to pursue an application for rezoning from A-O to MHC effectively barred plaintiffs from seeking judicial review of that question. Without such an application, and a final decision by the township, it is impossible to say whether (1) the township would permit such a use of plaintiffs' property and (2) whether a denial of such a request would be reasonable in light of the township's efforts to channel future MHC development to its

---

[28] *Hendee*, unpub op at 9 n 3 (DONOFRIO, P.J., concurring in part and dissenting in part).

20

border with the village of Pinckney, which has the only public water and sewer systems in the area.[29] We agree with the partial dissent of Judge DONOFRIO:

> After reviewing the record, I conclude that plaintiffs cannot show that they sought alternative uses of the property and were denied, or that they applied for the minimum variance necessary to place the land in productive economic use within the zoning classification. Plaintiffs did not seek a decision from the appropriate administrative body regarding either a rezoning application or a variance request regarding a 498-unit MHC and instead sought premature relief from the judiciary by filing the instant lawsuit.[30]

## IV. CONCLUSION

We would hold that the trial court and the Court of Appeals erred by reaching the question whether the township zoning ordinance was unconstitutional and thus also erred by holding that plaintiffs were entitled to an order enjoining the township from interfering with plaintiffs' development of a 498-unit MHC. Plaintiffs never submitted an application for rezoning or a variance to construct an MHC. Thus, plaintiffs' claim was not ripe for judicial review.

---

[29] Under *Schwartz*, 426 Mich at 325-326, the trial court had the power to grant injunctive relief permitting an MHC use only if the ordinance's classification of the property was unconstitutional. Similarly, we would hold that in the absence of an expressed prohibition of a lawful use in the zoning ordinance or a prohibition based on a suspect classification, an exclusionary zoning claim is not ripe for judicial review if the zoning authority has not first been afforded an opportunity to determine whether its ordinance has

> the effect of totally prohibiting the establishment of a land use within a township in the presence of a demonstrated need for that land use within either the township or surrounding area with the state, unless there is no location within the township where the use may be appropriately located, or the use is unlawful. [Former MCL 125.297a.]

[30] *Hendee*, unpub op at 5-6 (DONOFRIO, P.J., concurring in part and dissenting in part).

21

Because plaintiffs' claim was not ripe for judicial review, the trial court had no basis to enjoin the township from enforcing its zoning ordinance, nor should the court have awarded plaintiffs their costs and expert witness fees.

We would reverse the judgment of the Court of Appeals and remand this case for entry of a dismissal order consistent with this opinion.

HATHAWAY, J., concurred with WEAVER, J.

STATE OF MICHIGAN

SUPREME COURT

JEFFREY HENDEE, MICHAEL HENDEE,
LOUANN DEMOREST HENDEE, and
VILLAGE POINTE DEVELOPMENT LLC,

        Plaintiffs-Appellees,

v                                      Nos. 137446 and
                                            137447

PUTNAM TOWNSHIP,

        Defendant-Appellant.
_____

CAVANAGH, J. (*concurring*).

I concur in the result only. I agree that, on the facts of this case, plaintiffs' claims are not ripe for review. I write separately because I continue to adhere to my dissenting positions in *Paragon Props Co v City of Novi,* 452 Mich 568, 583-593; 550 NW2d 772 (1996) (CAVANAGH, J., dissenting), and *Electro-Tech, Inc v H F Campbell Co*, 433 Mich 57, 92-132; 445 NW2d 61 (1989) (BRICKLEY, J., joined by LEVIN and CAVANAGH, JJ., dissenting). While I generally agree that challenges to zoning ordinances may require a final decision to ripen, the finality rule adopted in *Paragon* and *Electro-Tech* serves the purposes of the ripeness doctrine at best imprecisely, and at worst incorrectly. The lead opinion's reasoning would only exacerbate that error.

## I. OVERVIEW OF FINALITY AND RIPENESS

The question before this Court is whether plaintiffs' constitutional and statutory exclusionary zoning claims are ripe for review. As stated by the *Paragon* majority, in the land-use context, "'the doctrine of ripeness is intended to avoid premature adjudication or review of administrative action.'" *Paragon*, 452 Mich at 579 n 12 (citation omitted). Thus, when a final decision by the relevant governmental agency is necessary to establish whether the alleged injury has occurred, I would agree that it serves the purposes of the ripeness doctrine to require a final decision from that agency. As aptly stated in Justice BRICKLEY's *Electro-Tech* dissent, "a principled decision to apply, or not to apply, the finality requirement requires us to look beyond the label attached to a constitutional land use claim to the policy underlying the requirement and to the nature of the governmental conduct under attack." *Electro-Tech*, 433 Mich at 100.

The United States Supreme Court's jurisprudence is consistent with this approach and has required a final decision by an agency only to the extent that the decision is necessary for evaluating the claim that is before the reviewing court. Thus, in the taking context, it has held that "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Co Regional Planning Comm v Hamilton Bank of Johnson City*, 473 US 172, 186; 105 S Ct 3108; 87 L Ed 2d 126 (1985). The Court has not applied this rule, however, if a final decision would not serve the ripeness doctrine, such as when the agency no longer has discretion in how the

regulation is applied to a plaintiff's property and, thus, a final decision on the applicability of the regulation to the plaintiff's property is not necessary to evaluate the plaintiff's taking claim. See *Suitum v Tahoe Regional Planning Agency*, 520 US 725, 738-740; 117 S Ct 1659; 137 L Ed 2d 980 (1997), stating that "[b]ecause the agency has no discretion to exercise over Suitum's right to use her land, no occasion exists for applying *Williamson County*'s requirement that a landowner take steps to obtain a final decision about the use that will be permitted on a particular parcel." Thus, the Court has not drawn bright-line rules about what degree of finality is required to meet the ripeness doctrine based on the types of claims raised.

This Court's finality and ripeness jurisprudence stands in marked contrast to the United States Supreme Court's sensible and reasoned approach. In *Electro-Tech*, the Court held that the finality requirement applied in the taking context, regardless of whether the claim arose out of the Just Compensation Clause or the Due Process Clause of the constitution. *Electro-Tech*, 433 Mich at 76 n 21, 79. This holding was erroneously used to extend the *Williamson* finality rule to *all* constitutional challenges to zoning regulations.[1] See, e.g., *Lake Angelo Assoc v White Lake Twp*, 198 Mich App 65, 72-73;

---

[1] This extension is particularly unfortunate given that the underpinnings for applying this test to constitutional challenges outside the Fifth Amendment have since been rejected. In *Lingle v Chevron USA, Inc*, 544 US 528; 125 S Ct 2074; 161 L Ed 2d 876 (2005), the United States Supreme Court clarified that regulatory taking claims arise *exclusively* out of the Just Compensation Clause and never out of the Due Process Clause. Thus, the regulation's underlying validity is an inquiry that "is logically prior to and distinct from the question whether a regulation effects a taking . . . ." *Id.* at 543. This calls into question cases in which this Court held that taking claims may be framed in terms of either the Due Process Clause or the Taking Clause. See, e.g., *K & K Constr,*

3

498 NW2d 1 (1993).  The *Paragon* majority cemented this error in our jurisprudence in two ways.  First, it broadly declared that as-applied challenges are subject to the *Williamson* rule of finality, but facial challenges are not.  Second, it cavalierly stated that this rule is applicable to all as-applied challenges to zoning ordinances, regardless of whether analyzed "as a denial of equal protection, as a deprivation of due process under the Fourteenth Amendment, or as a taking under the Just Compensation Clause of the Fifth Amendment . . . ."  *Paragon*, 452 Mich at 576.  It is an extremely imprecise measure of ripeness to require the same type of final decision regardless of whether that decision actually serves the purposes of the ripeness doctrine.  As discussed, the United States Supreme Court has not even applied the *Williamson* test to every *taking* claim, let alone every *constitutional* claim.[2]

## II.  RIPENESS AND EXCLUSIONARY ZONING CLAIMS

The lead opinion's analysis today would exacerbate the errors in *Paragon* and *Electro-Tech* by extending the requirement that a final decision must have been made regarding the regulation's application to the plaintiff's property to all as-applied exclusionary zoning claims.  An essential feature of every type of exclusionary zoning

---

*Inc v Dep't of Natural Resources*, 456 Mich 570, 576; 575 NW2d 531 (1998), and *Bevan v Brandon Twp*, 438 Mich 385, 391; 475 NW2d 37 (1991).

[2] It also has not generally shared *Paragon*'s dependence on classifying claims as facial or as-applied.  See, e.g., *Suitum*, 520 US at 736 n 10, stating that "'facial' challenges to regulation are *generally* ripe the moment the challenged regulation or ordinance is passed . . . ."  (Emphasis added.)  Although the enactment of the ordinance itself generally ripens a facial claim for review, I do not favor adopting a bright-line rule to this effect.  It merely forces a court to engage in the additional analytical step of definitively labeling a claim as either facial or as-applied.

claim is that the alleged injury *is to an entire geographic area* and not a single parcel of land.[3]  As a result, exclusionary zoning claims exemplify the logical flaw in applying the *Williamson* taking finality test to all constitutional claims.  While a particular plaintiff may need to show an injury to have standing, the injury alleged in an exclusionary zoning claim is not specific to one parcel, and, therefore, whether it is ripe for review may be unrelated to whether a final decision has been made regarding the applicability of the regulation to one specific parcel or plaintiff.[4]  Thus, a final decision regarding the applicability of a regulation to a particular parcel may be needed to develop an injury sufficiently for a claim to be ripe in the context of a *taking* claim, in which the alleged harm is specific to the plaintiff's parcel, but it is not necessarily needed for an exclusionary zoning claim, in which the alleged injury is to an entire area.

Further, although it is not clear whether the lead opinion's and Justice CORRIGAN's analyses address constitutional or statutory exclusionary zoning claims, I would note that to the extent that the opinions apply the *Williamson* ripeness

---

[3] This is true regardless of whether the claim is facial or as-applied.  I am thus somewhat troubled by Justice CORRIGAN's conclusion that this case presents an as-applied exclusionary zoning claim on the basis that plaintiffs' claim relates to the infringement of plaintiffs' right to develop manufactured housing *on their property*.  Plaintiffs did raise constitutional claims that were specific to their property, but those are distinct from their exclusionary zoning claims.

[4] For this reason, I find puzzling the lead opinion's quotation of *Warth v Seldin*, 422 US 490; 95 S Ct 2197; 45 L Ed 2d 343 (1975), which addresses the importance of *standing* in exclusionary zoning claims.  While standing "bears close affinity to questions of ripeness," ripeness addresses "whether the harm asserted has matured sufficiently to warrant judicial intervention," whereas standing addresses whether the particular plaintiff has suffered a harm.  *Id.* at 499 n 10.  In this case, the question is not standing but whether plaintiffs' alleged harm has matured sufficiently for judicial review.

requirements to *statutory* exclusionary zoning claims, I disagree.[5]  While a statutory exclusionary zoning claim may not be ripe for review in the absence of the decision necessary to evaluate whether the plaintiff has suffered the harm required by the exclusionary zoning statute, MCL 125.3207, this inquiry is wholly distinct from the *Williamson* analysis.

### III.  APPLICATION OF THE RIPENESS DOCTRINE TO THIS CASE

Nonetheless, even though I disagree with the lead opinion's reasoning, I agree that plaintiffs' statutory and constitutional exclusionary zoning claims are not ripe for review on the facts of this case.  Plaintiffs essentially alleged that defendant's "actions" excluded manufactured housing communities (MHCs) from the township.  Therefore, to the extent that plaintiffs pleaded a constitutional exclusionary zoning claim, and regardless of whether it was based in substantive due process or equal protection, in order for plaintiffs' claim to be ripe, they must show that defendant has made decisions excluding MHCs to an impermissible disagree.[6]  I do not think that plaintiffs' claim of an alleged injury is ripe for review, especially given that defendant's ordinance recognizes an MHC

---

[5] To the extent that the opinions could be read to implicitly adopt the position of the Court of Appeals partial dissent that MCL 125.3207 provides the requirements for both constitutional and statutory claims, I disagree.  A statute may not supersede a constitutional claim recognized by this Court because the power to interpret the constitution and the scope of the rights it provides is within the judicial power held exclusively by the courts.  Const 1963, art 6, § 1; see also *People v Salsbury*, 134 Mich 537, 546; 96 NW 936 (1903).

[6] As noted by the Court of Appeals partial dissent, there is some question about whether plaintiffs pleaded such a claim.  But, for purposes of this analysis, I will assume that they did.

zoning classification and has a process for requesting that classification. While I do not believe that plaintiffs must necessarily show that MHCs have been excluded from *every* parcel in the defendant township in order for their claim to be ripe, they have not shown that they have been excluded from *any* parcels suitable for that use, including their own. Thus, I do not think that plaintiffs' constitutional exclusionary zoning claim is ripe for review.

Similarly, plaintiffs' statutory exclusionary zoning claim is not ripe. The current exclusionary zoning statute, MCL 125.3207,[7] requires in part that there be a "zoning ordinance" or a "zoning decision" that has "the effect of totally prohibiting the establishment of a land use within a local unit of government . . . ." This case does not involve the former, so plaintiffs must allege that there has been a zoning decision that has the effect of *totally* prohibiting MHCs from the defendant township. Again, given that the township ordinance has a process by which a landowner could seek rezoning and plaintiffs have not shown that they or any landowners were denied an MHC use on their property, plaintiffs have not presented a "zoning decision" that has the effect of totally prohibiting a use and ripening their claim for judicial review.

---

[7] When plaintiffs filed their complaint, the exclusionary zoning statute that applied to townships was former MCL 125.297a. See MCL 125.3702. While the previous statute applied only to townships, the current statute applies to all local units of government. This change does not affect the analysis in this case, and the statutes are otherwise identical.

## IV. CONCLUSION

Although I disagree with the lead opinion's analysis, which would extend and exacerbate the errors in *Electro-Tech* and *Paragon*, ultimately I agree with its conclusion that plaintiffs have not presented any exclusionary zoning claims that are ripe for review. Therefore, I concur with the decision to reverse the judgment of the Court of Appeals and remand the case for entry of a dismissal order consistent with this Court's decision.

KELLY, C.J., concurred with CAVANAGH, J.

S T A T E   O F   M I C H I G A N

SUPREME COURT

JEFFREY HENDEE, MICHAEL HENDEE,
LOUANN DEMOREST HENDEE, and
VILLAGE POINTE DEVELOPMENT LLC,

      Plaintiffs-Appellees,

v                                   Nos. 137446 and 137447

PUTNAM TOWNSHIP,

      Defendant-Appellant.

_____

CORRIGAN, J. (*concurring*).

In this zoning action, we consider whether the ripeness doctrine barred plaintiffs' exclusionary zoning claim and, if so, whether the Court of Appeals majority properly held that defendant township's previous denials of plaintiffs' application to rezone their property for a less intensive land use excused plaintiffs from having to formally pursue an application for a more intensive land use under the futility exception to the rule of finality. I concur in the result of the lead opinion, which holds that plaintiffs' exclusionary zoning claim is not ripe for judicial review. However, I cannot join its reasoning. I write separately to provide my analysis for concluding that plaintiffs' as applied exclusionary zoning claim is not ripe for judicial review and that the futility exception to the rule of finality is inapplicable.

## I. THE COURT OF APPEALS MAJORITY OPINION

After acknowledging the connection between the ripeness doctrine and the rule of finality in zoning actions, the Court of Appeals majority concluded that it was unnecessary to determine whether plaintiffs' exclusionary zoning claim constituted either a "facial" or an "as applied" challenge to defendant's zoning ordinance.[1] The majority also concluded that it was unnecessary to determine whether plaintiffs' exclusionary zoning claim was subject to the rule of finality, "holding that further township proceedings would have been futile assuming application of the rule."[2] The Court of Appeals majority reasoned that although plaintiffs had presented defendant an application to rezone their property as a 95-unit planned unit development (PUD) and not as a 498-unit manufactured housing community (MHC), "presenting an MHC application to the township would have been an exercise in futility and nothing more than a formal step to the courthouse."[3] The majority, therefore, held that the doctrine of ripeness did not bar plaintiffs' action.

## II. RIPENESS AND FINALITY IN ZONING

The Court of Appeals majority properly acknowledged the interrelation between the ripeness doctrine and the rule of finality in our zoning jurisprudence. At common law, the ripeness doctrine is one of several justiciability doctrines developed "to ensure

---

[1] *Hendee v Putnam Twp*, unpublished opinion per curiam of the Court of Appeals, issued August 26, 2008 (Docket Nos. 270594 and 275469).

[2] *Id*. at 6.

[3] *Id*. at 7.

that cases before the courts are appropriate for judicial action."[4]  Generally, "[a] claim is not ripe if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."[5]  "'In land use challenges, the doctrine of ripeness is intended to avoid premature adjudication or review of administrative action.'"[6]  The rationale of the ripeness doctrine in zoning actions "'rests upon the idea that courts should not decide the impact of regulation until the full extent of the regulation has been finally fixed and the harm caused by it is measurable.'"[7]

In *Electro-Tech, Inc v H F Campbell Co*, 433 Mich 57; 445 NW2d 61 (1989), this Court discussed the connection between the ripeness doctrine and the rule of finality in deciding whether the taking claim alleged by the plaintiff property owner was ripe for adjudication.  *Electro-Tech* introduced its discussion of finality with the following observation from *Williamson Co Regional Planning Comm v Hamilton Bank of Johnson City*, 473 US 172; 105 S Ct 3108; 87 L Ed 2d 126 (1985), about the conceptual distinction between the exhaustion of administrative remedies and the finality of the administrative decision:

> "The question whether administrative remedies must be exhausted is conceptually distinct . . . from the question whether an administrative action must be final before it is judicially reviewable.  While the policies underlying the two concepts often overlap, the finality requirement is

---

[4] *Mich Chiropractic Council v Comm'r of the Office of Fin & Ins Servs*, 475 Mich 363, 370; 716 NW2d 561 (2006).

[5] *Id.* at 371 n 14 (citation and quotation marks omitted).

[6] *Paragon Props Co v City of Novi*, 452 Mich 568, 579 n 12; 550 NW2d 772 (1996), quoting *Herrington v Sonoma Co*, 834 F2d 1488, 1494 (CA 9, 1987).

[7] *Paragon*, 452 Mich at 579 n 12, quoting *Herrington*, 834 F2d at 1494.

3

concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate."[8]

*Electro-Tech* stated that the first finality requirement under *Williamson* required "the plaintiff [to] obtain a *final decision* regarding the application of the zoning ordinance and subdivision regulations to its property."[9] "The second finality requirement set forth by the *Williamson* Court is that a taking claim is not ripe until a plaintiff has sought compensation through state procedures."[10] *Electro-Tech* concluded that the plaintiff, at most, had satisfied the second *Williamson* finality requirement and held that "because the conditional approval of the plaintiff's site plan was not the city's final disposition of the matter, we hold that the plaintiff's action under 42 USC 1983 was not ripe for adjudication."[11]

This Court also addressed the import of *Electro-Tech* and the finality requirements of *Williamson* in subsequent cases. For example, *Paragon* stated that *Electro-Tech* "expressly adopted the *Williamson* finality requirements . . . ."[12] *Paragon* also reaffirmed that the rule of finality or the first finality requirement of *Williamson* "'is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that

---

[8] *Electro-Tech*, 433 Mich at 80-81, quoting *Williamson*, 473 US at 192-193.

[9] *Electro-Tech*, 433 Mich at 81.

[10] *Id.* at 87.

[11] *Id.* at 91.

[12] *Paragon*, 452 Mich at 578.

inflicts an actual, concrete injury . . . ."[13]  Additionally, *Paragon* observed that "*Williamson* articulated the need for finality in the context of land use regulation."[14]  The interrelation between the ripeness doctrine and the rule of finality is so embedded in our zoning jurisprudence that this Court has occasionally discussed the two concepts interchangeably.[15]  In any event, I would conclude that this Court's discussions concerning the ripeness doctrine and the rule of finality in *Electro-Tech* and *Paragon* remain equally instructive today.

### III. "FACIAL" AND "AS APPLIED" CHALLENGES

While the Court of Appeals majority acknowledged the connection between the ripeness doctrine and the rule of finality, it erroneously concluded that it was unnecessary to determine whether plaintiffs' exclusionary zoning claim constituted a facial or an as applied challenge to defendant's zoning ordinance.  The lead opinion repeats this error by failing to define plaintiffs' exclusionary zoning claim as either a facial or an as applied challenge.  In so doing, the lead opinion blurs the established distinctions between facial

---

[13] *Id*. at 577, quoting *Williamson*, 473 US at 193; see also *MacDonald, Sommer & Frates v Yolo Co*, 477 US 340, 348; 106 S Ct 2561; 91 L Ed 2d 285 (1986) ("It follows from the nature of a regulatory takings claim that an essential prerequisite to its assertion is a final and authoritative determination of the type and intensity of development legally permitted on the subject property. *A court cannot determine whether a regulation has gone "too far" unless it knows how far the regulation goes*.") (emphasis added).

[14] *Paragon*, 452 Mich at 577.

[15] See, e.g., *Bevan v Brandon Twp*, 438 Mich 385, 392 n 8; 475 NW2d 37 (1991) (stating that the plaintiffs' claim "falls short of compliance with finality (ripeness) requirements laid down in *Williamson Co Regional Planning Comm v Hamilton Bank of Johnson City*, 473 US 172; 105 S Ct 3108; 87 L Ed 2d 126 (1985), and applied by this Court in *Electro-Tech*, *supra*.").

5

and as applied challenges and sidesteps any substantive discussion about the differing ripeness and finality analyses applicable to each type of challenge.

As the lead opinion explains in part, a facial challenge to the validity of a zoning ordinance asserts that "the mere existence and threatened enforcement of the ordinance materially and adversely affects values and curtails opportunities of all property regulated in the market."[16] By contrast, "[a]n 'as applied' challenge alleges a present infringement or denial of a specific right or of a particular injury in process of actual execution."[17] Whether it is analyzed under 42 USC 1983 as a denial of equal protection, as a deprivation of due process under the Fourteenth Amendment, or as a taking under the Just Compensation Clause of the Fifth Amendment, an as applied challenge is subject to the rule of finality.[18] This contrasts with a facial challenge, to which the rule of finality does not apply because "such challenges attack the very existence or enactment of an ordinance."[19] Simply stated, the threshold issues posed by the rule of finality and the ripeness doctrine do not apply to facial challenges to a zoning ordinance.[20]

---

[16] *Paragon*, 452 Mich at 576, citing *Village of Euclid v Ambler Realty Co*, 272 US 365, 395; 47 S Ct 114; 71 L Ed 303 (1926).

[17] *Paragon*, 452 Mich at 576, citing *Euclid*, 272 US at 395.

[18] *Paragon*, 452 Mich at 576; see also *Lake Angelo Assoc v White Lake Twp*, 198 Mich App 65, 71; 498 NW2d 1 (1993) ("[W]hen our Supreme Court followed *Williamson*, it logically adopted the finality requirement to claims based on the Fifth and Fourteenth Amendments, not just to actions based on [42 USC] 1983.").

[19] *Paragon*, 452 Mich at 577.

[20] As the United States Supreme Court explained, "'facial' challenges . . . are generally ripe the moment the challenged regulation or ordinance is passed, but face an 'uphill battle,' since it is difficult to demonstrate that '"mere enactment"' of a piece of

Accordingly, it is essential to first resolve the question avoided by the Court of Appeals majority and the lead opinion: whether plaintiffs' exclusionary zoning claim constituted a facial or an as applied challenge. This determination is the critical starting point in any analysis of the extent to which the ripeness doctrine and the rule of finality apply in this case. Defendant urges this Court to conclude that plaintiffs' exclusionary zoning claim is not ripe for adjudication because plaintiffs neither sought nor obtained a decision concerning their contemplated development of a 498-unit MHC from defendant before filing suit. Plaintiffs respond that their exclusionary zoning claim presents a facial challenge, which is ripe for adjudication as a matter of law under *Paragon*. I disagree with plaintiffs' contention.

A review of plaintiffs' multicount complaint reveals that plaintiffs alleged facial and as applied challenges in four counts, including a denial of equal protection, a deprivation of substantive due process, a regulatory taking, and a statutory exclusionary zoning claim. Yet plaintiffs' exclusionary zoning claim does *not* amount to a facial challenge because the claim does not allege that "the mere existence and threatened enforcement of the ordinance materially and adversely affects values and curtails opportunities of all property regulated in the market."[21] Instead, plaintiffs' exclusionary zoning claim alleges "a present infringement or denial of a specific right," namely

---

legislation 'deprived [the owner] of economically viable use of [his] property.'" *Suitum v Tahoe Regional Planning Agency*, 520 US 725, 736 n 10; 117 S Ct 1659; 137 L Ed 2d 980 (1997) (citations omitted).

[21] *Paragon*, 452 Mich at 576, citing *Euclid*, 272 US at 395.

plaintiffs' right to develop a 498-unit MHC on their property.[22]   Alternatively, the

complaint alleges that plaintiffs suffered "a particular injury in [the] process of actual

execution" or enforcement of defendant's zoning ordinance.[23]   Because plaintiffs'

exclusionary zoning claim challenges the infringement of a specific right or aspects of the

enforcement of the zoning ordinance, I would conclude that plaintiffs presented an as

applied challenge.[24]

Even though I conclude that plaintiffs' exclusionary zoning claim is an as applied

challenge, I emphasize that future litigants should not endeavor to avoid the threshold

issues of ripeness and finality by masking an as applied challenge as a facial challenge.

As Judge Easterbrook of the United States Court of Appeals for the Seventh Circuit aptly

observed:

> [A] property owner may not avoid *Williamson* by applying the label
> "substantive due process" to the claim.  So too with the label "procedural
> due process."  *Labels do not matter.  A person contending that state or
> local regulation of the use of land has gone overboard must repair to state
> court.*[25]

Judge Easterbrook's statement is similarly persuasive when considering the substance of

a zoning challenge.  Whether the challenge is labeled "facial" or "as applied," it is not the

---

[22] *Paragon*, 452 Mich at 576, citing *Euclid*, 272 US at 395.

[23] *Paragon*, 452 Mich at 576, citing *Euclid*, 272 US at 395.

[24] See *Susan R Bruley Trust v City of Birmingham*, 259 Mich App 619, 626; 675 NW2d 910 (2003) (concluding that because the plaintiff's complaint did not dispute any aspect of the execution or enforcement of the zoning ordinance, it presented a facial challenge).

[25] *River Park, Inc v Highland Park*, 23 F3d 164, 167 (CA 7, 1994) (citation omitted).

label that matters. Instead, a reviewing court should analyze the substance of the challenge and what that challenge requires the court to resolve.[26]

## IV. THE FUTILITY EXCEPTION TO THE RULE OF FINALITY

Having concluded that plaintiffs presented an as applied challenge to defendant's zoning ordinance, I would hold that both the ripeness doctrine and the rule of finality apply to plaintiffs' exclusionary zoning claim, consistent with *Paragon*. That conclusion does not end my analysis. As the Court in *Paragon* implicitly recognized, a judicially created futility exception to the rule of finality exists.[27] In order to invoke the futility exception, "'it must be "*clear* that an appeal to an administrative board is an exercise in futility and nothing more than a formal step on the way to the courthouse.""'[28] Additionally, federal common law generally recognizes that the plaintiff must submit at least one "meaningful application" to the local zoning agency before asserting the

---

[26] See *Smookler v Wheatfield Twp*, 394 Mich 574, 581; 232 NW2d 616 (1975) (opinion by WILLIAMS, J.) ("[W]hen confronted with a regulation invalid on its face, it is not necessary for this Court to examine the reasonableness of the ordinance *as applied* to plaintiffs' land.") (emphasis added).

[27] *Paragon* rejected the plaintiff's argument that it would have been futile to seek a use variance from the defendant's zoning board of appeals. *Paragon*, 452 Mich at 581-583. As the lead opinion correctly notes, our Court of Appeals has discussed the futility exception at greater length in more recent opinions. See, e.g., *L & L Wine & Liquor Corp v Liquor Control Comm*, 274 Mich App 354, 358; 733 NW2d 107 (2007).

[28] *L & L Wine*, 274 Mich App at 358, quoting *Manor House Apartments v City of Warren*, 204 Mich App 603, 605; 516 NW2d 530 (1994).

9

applicability of the futility exception.[29] Further, federal caselaw confirms that "[t]he futility exception is narrow, and mere uncertainty does not establish futility."[30]

I am not persuaded that the futility exception to the rule of finality applied in this case. Contrary to the Court of Appeals majority, I think that it is unclear whether plaintiffs' pursuing an application for a 498-unit MHC development would have been little more than a formal step to the courthouse. I agree with the lead opinion that defendant's previous denials of plaintiffs' application to rezone their property for a 95-unit PUD does not summarily establish that it would have been futile for plaintiffs to apply for a more intensive land use, including the 498-unit MHC development eventually sought by plaintiffs in the trial court. "Land use planning is not an all-or-nothing proposition."[31] The denial of one proposed development by a local zoning agency "cannot be equated with a refusal to permit any development . . . ."[32]

Moreover, I agree with the lead opinion insofar as it concludes that plaintiffs failed to submit at least one meaningful application to defendant. As *MacDonald* stated, "[r]ejection of exceedingly grandiose development plans does not logically imply that

---

[29] See *Bannum Inc v City of Louisville*, 958 F2d 1354, 1363 (CA 6, 1992) ("For the exception to be available to an aggrieved landowner, the landowner must have submitted at least one 'meaningful application' for a variance from the challenged zoning regulations."); see also *MacDonald*, 477 US at 353 n 8 ("The implication is not that future applications would be futile, but that a meaningful application has not yet been made.").

[30] *Manufactured Home Communities Inc v City of San Jose*, 420 F3d 1022, 1035 (CA 9, 2005).

[31] *MacDonald*, 477 US at 347.

[32] *Id.*

less ambitious plans will receive similarly unfavorable reviews."[33]  In the same fashion, it stands to reason that the rejection of a less intensive land use does not offer a fair indication of how the local zoning authority would receive a comprehensive proposal for a more intensive land use.[34]  In either instance, the plaintiff has not filed one meaningful application, and the local zoning authority is deprived of the opportunity to reach "a final, definitive position regarding how it will apply the regulations at issue to the particular land in question."[35]

The bottom line is that this Court cannot decide whether defendant is, in fact, excluding MHCs without first knowing how the township would have responded to a proposed MHC development within the township.  In other words, this Court cannot conclude that the township is excluding MHCs when nobody has ever asked the township for permission to develop a MHC.  Just as this Court held in *Mich Chiropractic Council*, 475 Mich at 382, that the issue was not ripe for review in that case because the plaintiffs had not yet suffered an "actual . . . injury," the issue in the instant case is also not ripe because plaintiffs have not yet suffered an actual injury.  Plaintiffs have not yet been injured because the township has not yet refused to allow them to use their property for

---

[33] *Id*. at 353 n 9.

[34] One of the reasons that defendant rejected the 95-unit PUD was because it determined that there was no additional need for that use as there was already sufficient property zoned for PUDs in the township.  If plaintiffs had submitted their MHC proposal to the township, the township would have had the opportunity to determine whether there was a need for MHCs in the township that was not being fulfilled.  However, because plaintiffs never requested rezoning for that purpose, there is no way to know what the township would have done.

[35] *Williamson*, 473 US at 191.

an MHC since plaintiffs have not yet made such a request to the township. "[A] landowner must give a land-use authority an opportunity to exercise its discretion . . . ."[36] Here, the township never had an opportunity to exercise its discretion regarding the contemplated 498-unit MHC development.

## V. CONCLUSION

Plaintiffs' exclusionary zoning claim is not ripe for adjudication because plaintiffs neither sought nor obtained a decision concerning their contemplated development of a 498-unit MHC before filing suit. I would hold that plaintiffs' as applied challenge to the validity of defendant's zoning ordinance is subject to the threshold doctrine of ripeness and the interrelated rule of finality. Because plaintiffs cannot cross this threshold and because the futility exception to the rule of finality is inapplicable in this case, I would reverse the judgment of the Court of Appeals.

YOUNG and MARKMAN, JJ., concurred with CORRIGAN, J.

---

[36] *Palazzolo v Rhode Island*, 533 US 606, 620; 121 S Ct 2448; 150 L Ed 2d 592 (2001).