LAKE ANGELO ASSOCIATES v TOWNSHIP OF WHITE LAKE

Docket No. 135289. Submitted November 3, 1992, at Detroit. Decided
January 20, 1993, at 9:05 A.M.

Lake Angelo Associates brought an action in the Oakland Circuit
Court against White Lake Township, alleging that the refusal
of the township to issue a permit to allow the association to
proceed with the grading of its property within the township
was an abuse of police powers, and seeking an injunction to
prevent the township from interfering with the grading or a
writ of mandamus compelling it to issue the necessary permit.
The trial court, Robert L. Templin, J., granted summary dispo-
sition for the defendant on the basis that the suit was not ripe
for adjudication because the defendant had not made a final
decision concerning the issuance of a permit. The plaintiff
appealed.

The Court of Appeals *held:*

1. A property owner must seek and secure a final determina-
tion concerning the issuance of a permit required under a
zoning ordinance before seeking the aid of the courts on the
basis that the property was taken without just compensation or
due process. Because the defendant had not made a final
decision concerning the issuance of the permit, judicial inter-
vention was not appropriate.

2. The plaintiff's claim that the zoning ordinance was arbi-
trary, capricious, and unreasonable as applied to it must be
pursued to a final decision by the defendant before the plaintiff
may seek adjudication of that question by a court.

3. Mandamus is not an appropriate remedy until the plaintiff
has exhausted all other remedies.

Affirmed.

ZONING — TAKING OF PROPERTY — JUST COMPENSATION — EXHAUS-
TION OF REMEDIES.

A property owner must seek and obtain a final decision of the
appropriate government unit relative to the issuance of a

REFERENCES
Am Jur 2d, Zoning and Planning §§ 1044-1045.
See ALR Index under Exhaustion of Remedies; Zoning.

permit required by a zoning ordinance before seeking judicial assistance in the form of injunctive relief or mandamus on the basis that the failure to issue a permit constituted a taking of the property without just compensation or due process of law or that the zoning ordinance was arbitrary, capricious, and unreasonable as applied to the subject property (US Const, Ams V, XIV).

*Dykema Gossett* (by *Alan M. Greene*), for the plaintiff.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Gail P. Massad* and *Stuart Trager*), for the defendant.

Before: FITZGERALD, P.J., and HOLBROOK, JR., and CORRIGAN, JJ.

PER CURIAM. Plaintiff appeals as of right the order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(10) in this land use action. On appeal, plaintiff asserts that this action was sufficiently ripe to allow the trial court to adjudicate the merits. We affirm.

### FACTS

Plaintiff owns eighty acres of land in White Lake Township that was formerly a sand and gravel mine. The mine was abandoned in the early 1960s and since then has been used by trespassers for dumping and off-road activities. Plaintiff acquired the property in 1979 with the expectation of developing the parcel into a subdivision of single-family residences to be known as "Wingate Lake Estates."

In June 1980, plaintiff presented a final preliminary plat for the development, which was approved by defendant. Plaintiff filed requests for and received extensions of the preliminary plat

approval through January 6, 1989. These exten-
sions enabled plaintiff to delay obtaining a final
plat plan.

In December 1987, plaintiff submitted grading
and excavation plans to defendant for approval.
The plans called for moving or removing over
300,000 cubic yards of earth, sand, and gravel from
the site. Defendant requested several changes to
these plans with which plaintiff complied. On July
22, 1988, defendant approved the grading plan, but
noted that an excavation permit would be needed
to remove the excess sand and gravel in accor-
dance with a local zoning ordinance. Plaintiff sub-
sequently submitted plans that would comply with
the ordinance, and, after several revisions, a final
permit was approved by defendant's attorney, en-
gineer, and building inspector. This plan was then
submitted to defendant's board of trustees for
consideration and final approval at their April 4,
1989, meeting.

In the meantime, plaintiff's final extension of its
preliminary plat plan expired. Plaintiff never re-
quested another extension after the January 6,
1989, deadline, nor did it ever present a final plat
to defendant. On March 23, 1989, defendant in-
formed plaintiff that it must either file for another
extension of the 1980 preliminary plat plan or
submit a new one. Plaintiff took no action, instead
waiting for the April 4 board meeting.

At the board meeting, the board informed plain-
tiff that its preliminary plat had been approved
over ten years prior and that there had been many
changes in the zoning law of White Lake since
that time. Specifically, defendant had increased its
minimum lot size, which rendered the original plat
plan invalid. The board indicated that it could not
approve the excavation permit because it would
have created a nonconforming use under present

zoning law. In addition, citizens appeared at the meeting to express their concerns over the project. In response, the board created a committee that was to study the entire development and was to make a report within six months. No study was ever undertaken by this committee.

Plaintiff filed suit against defendant on May 18, 1989, alleging that defendant's failure to allow it to excavate its property was an abuse of defendant's police power. Plaintiff sought either an injunction preventing defendant from interfering with plaintiff's grading of its land or the issuance of a writ of mandamus compelling defendant to issue a permit. It also sought a ruling that defendant's zoning ordinance did not apply to plaintiff's proposed operations. Defendant moved for summary disposition on the ground that the complaint was not ripe for adjudication, because plaintiff had not received a final decision from the township or the zoning board of appeals. In holding that the action was not ripe, the trial court, relying on *Electro-Tech, Inc v H F Campbell Co,* 433 Mich 57; 445 NW2d 61 (1989), cert den 493 US 1021 (1990), stated:

> In the instant case, the plaintiff has not submitted a revised plat pursuant to the Township Ordinance despite the expiration of the prior plat approval, nor has the plaintiff requested a variance to allow grading and mining, a mining permit, or complied with the conditions requested by the Township Board. Therefore, this Court is going to hold that plaintiff's claims are not ripe and the defendant's motion in this regard is granted.

I

Plaintiff first contends that the trial court incor-

rectly relied on *Electro-Tech* in holding that plaintiff's suit was not ripe for adjudication, because *Electro-Tech* is limited to federal civil rights claims brought under 42 USC 1983. We disagree.

In *Electro-Tech,* the plaintiff submitted a building plan for approval to the City of Westland. The plan was conditionally approved by the city council, which imposed five conditions that had to be satisfied before final approval would be given. The plaintiff objected to the condition that it give the city a small strip of land adjacent to a thoroughfare for a future widening of the street. The plaintiff never appealed the decision of the council, nor did it submit a final site plan to the building department for approval. The plaintiff then brought a 42 USC 1983 suit against the city. Our Supreme Court adopted the ruling of *Williamson Co Regional Planning Comm v Hamilton Bank of Johnson City,* 473 US 172; 105 S Ct 3108; 87 L Ed 2d 126 (1985), and stated:

> We hold that before proceeding under 42 USC 1983, a property owner must first obtain a final decision from the particular governmental entity that is alleged to have unconstitutionally taken his property and also attempt to obtain just compensation through inverse condemnation. [*Electro-Tech, supra* at 61.]

In *Williamson,* the property owner had obtained approval from the county of a preliminary plat to develop a large tract of land. During development, the county changed its zoning ordinance to reduce housing density. The county did not impose this new ordinance on completed stages of development, but did impose it on subsequent phases of development. The county eventually denied a revised plat for the remaining phases of development on various grounds, including the new den-

sity ordinance. The landowner, without seeking a variance from these conditions, sued the county under § 1983. The Court held that the suit was not ripe, because no final decision had been made regarding the land. The language used by the Court did not limit its holding to § 1983 cases:

> As the Court has made clear in several recent decisions, a claim that the application of government regulations affects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue. . . .
>
> *     *     *
>
> In sum, respondent's claim is premature, whether it is analyzed as a deprivation of property without due process under the Fourteenth Amendment, or as a taking under the Just Compensation Clause of the Fifth Amendment. [*Williamson, supra* at 186.]

Because *Electro-Tech* adopted *Williamson,* it too cannot be held to be limited to federal civil rights cases. The language of the Court itself belies such a limitation:

> As explained by Justice BRICKLEY, "[r]egardless of the manner in which a 'regulatory taking' claim is framed, whether as a violation of the Just Compensation Clause of the Fifth Amendment or of the Due Process Clause of the Fourteenth Amendment, the claim does not ripen until the landowner has received a final decision regarding the application of the regulation or ordinance to the particular piece of property. *Williamson, supra; MacDonald, Sommer & Frates v Yolo Co,* 477 US 340; 106 S Ct 2561; 91 L Ed 2d 285 (1986)." (*Post,* p 94.) Because the City of Westland did not have the opportunity to make a final decision regarding Electro-Tech's property, see section II(C),

we hold that its claim was not ripe for judicial review. [*Electro-Tech, supra* at 79.]

Both *Electro-Tech* and *Williamson* specifically stated that this rule applies to all Fifth and Fourteenth Amendment takings.[1] Thus, when our Supreme Court followed *Williamson,* it logically adopted the finality requirement to claims based on the Fifth and Fourteenth Amendments, not just to actions based on § 1983.

Additionally, limiting the finality requirement to § 1983 actions would frustrate the reasoning behind *Williamson* and *Electro-Tech.* The purpose behind the finality rule is to ensure that there actually was a taking. In *Stephens v Tahoe Regional Planning Agency,* 697 F Supp 1149, 1153 (D Nev, 1988), the court held:

> The very nature of a taking claim dictates that the plaintiff obtain a final administrative decision regarding the extent to which he may utilize his property. Such a final decision is essential because in determining whether an actual taking has occurred, the key inquiry involves the scope and type of land uses permitted the plaintiff.

In *Electro-Tech, supra* at 85-86, the Court stated that until a final decision is reached,

> it is impossible to accurately determine the extent to which plaintiff's land retained any reasonable beneficial use or the extent to which the plaintiff's expectation interest has been destroyed.[32]

---

[32] The reason we would require Electro-Tech to address each condition imposed by the council is illustrated by the following scenario. Suppose Electro-Tech had refused to comply or was, in fact, unable to

[1] See *Electro-Tech, supra;* see also *Eide v Sarasota Co,* 908 F2d 716 (CA 11, 1990), cert den — US —; (1991); *Weissman v Fruchtman,* 700 F Supp 746 (SD NY, 1988); and *Shelter Creek Development Corp v City of Oxnard,* 838 F2d 375 (CA 9, 1988), cert den 488 US 851 (1988).

comply with one of the "valid" conditions imposed by the council. Under these circumstances, a question would arise regarding the extent to which the unlawful dedication requirement actually affected the plaintiff's "beneficial use" of the land. A similar question would arise as to whether Electro-Tech's "expectation interest" was destroyed by its own failure to meet one of the "valid" conditions. The requirement that the building department issue a final decision on each of the four "valid" conditions thus serves an indispensable function in this case.

We conclude that the reasoning of *Electro-Tech* renders it applicable to all taking cases, not just § 1983 claims.

II

Plaintiff further asserts that the zoning ordinance as applied to its situation is unreasonable and, thus, unconstitutional.[2]

There is no Michigan case law interpreting the application of *Electro-Tech's* finality requirement to claims that zoning ordinances are arbitrary, capricious, and unreasonable. In analyzing *Williamson,* however, courts in foreign and federal jurisdictions have focused on whether the claim is that the ordinance is unconstitutional on its face or is merely unconstitutional "as applied" to a particular parcel.[3] In *Pennell v San Jose,* 485 US 1; 108 S Ct 849; 99 L Ed 2d 1 (1988), the Court held that while a claim that an ordinance is facially arbitrary and unreasonable is ripe for adjudication even in the absence of a final decision by the local governmental body, the bringing of

[2] Because a final decision must be obtained to render plaintiff's taking and due process claims ripe for judicial review, we need not address plaintiff's argument that the ordinance amounted to a regulatory taking because it was overbroad. Likewise, plaintiff's equal protection claim must fail on the ground of ripeness. See *Seguin v Sterling Heights,* 968 F2d 584 (CA 6, 1992).

[3] Plaintiff contends that if it is not allowed to extract the extra sand and gravel and sell it, it would not have any economically feasible use for its land.

the claim in that case was premature because the plaintiffs had not identified any property that had been taken as a result of the application of the ordinance. The rule has emerged that with respect to claims that allege that an ordinance is arbitrary and capricious as applied to a particular situation, such as the present one, the plaintiff must seek a final decision before claiming that there was a taking of the property in the constitutional sense.[4] We agree with that rule and hold that a judicial challenge to the constitutionality of a zoning ordinance as it is applied to a particular situation is not ripe until the plaintiff has received a final nonjudicial determination regarding the permitted used of the land.

Next, plaintiff contends that, because it had met all the requirements imposed by defendant and had an approved preliminary plat plan, it was entitled to an approved final plat plan for the site and that a writ of mandamus is the appropriate remedy.

The general rule is that a writ of mandamus is not to be issued where the plaintiff can appeal the error. *Wells v Montcalm Circuit Judge,* 139 Mich 544; 102 NW 1001 (1905); *Tarsney v Wayne Circuit Judge,* 152 Mich 641; 116 NW 465 (1908). Although these cases dealt with writs directed toward judicial officers, in *Trojan v Taylor Twp,* 352 Mich 636; 91 NW2d 9 (1958), the Court implicitly adopted the reasoning in a building permit case. In *Trojan,* the plaintiff sought a writ of mandamus to compel the City of Taylor to issue a building permit. The

---

[4] See, e.g., *Smithfield Concerned Citizens for Fair Zoning v Town of Smithfield,* 907 F2d 239 (CA 1, 1990); *Beacon Hill Farm Assocs II Ltd Partnership v Loundoun Co Bd of Supervisors,* 875 F2d 1081 (CA 4, 1989); *Crow-New Jersey 32 Ltd Partnership v Clinton Twp,* 718 F Supp 378 (D NJ, 1989); *Unity Ventures v Lake Co,* 841 F2d 770 (CA 7, 1988), cert den sub nom *Alter v Schroeder,* 488 US 891 (1988); and *Shelter Creek Development Corp v City of Oxnard,* n 1 *supra.*

defendant argued that a writ was inappropriate because the plaintiff had not appealed the decision of the building department to the zoning board of appeals. The trial court held:

> There is a general rule that persons seeking authority from a governmental unit must exhaust their remedies within such governmental unit before seeking relief in court. [*Trojan, supra* at 638.]

The Supreme Court excused the plaintiff's failure to appeal to the zoning board because to do so would be futile. Here, plaintiff has not shown that an appeal to the zoning board would be futile. Therefore, the trial court properly concluded that plaintiff must first appeal to the board before it can seek a writ of mandamus.

Affirmed.