Weaver, J.
In this zoning case, Putnam Township (1) denied plaintiffs’ request to rezone a 144-acre parcel from agricultural-open space (A-O) use to single-family, rural residential (R-l-B) use, (2) denied a request for a planned unit development (PUD) that would have permitted R-l-B development of the parcel and, (3) denied a use variance that would have permitted residential development of up to 95 lots. In light of these circumstances, we consider whether the trial court had jurisdiction to entertain a claim of exclusionary zoning and grant relief that would allow plaintiffs to use the property for a 498-unit manufactured housing community (MHC).
Plaintiffs’ exclusionary zoning claim was premised on the notion that because the township’s zoning map classified no appropriate land for MHC use and the township’s master plan designated only unsuitable property for that use, the township’s ordinance was facially invalid. The trial court agreed with plaintiffs and granted relief on the basis of a finding that the township had engaged in exclusionary zoning and that MHC development was an appropriate use of plaintiffs’ property.
On appeal, the Court of Appeals majority affirmed in part. Concluding that plaintiffs had presented an ap *560 parently “facial” challenge to the constitutionality of the ordinance[1] because it did not include MHC development,[2] the majority also determined that plaintiffs had presented an “as applied” challenge to the constitutionality of the ordinance. The majority found it unnecessary to determine whether the exclusionary zoning claim presented a facial challenge and whether it was subject to the rule of finality, however, “holding that further township proceedings would have been futile assuming application of the rule.”[3] The as-applied challenge was not subject to finality and ripeness requirements because, in light of the township’s denial of plaintiffs’ applications to rezone the property for a lower-density residential use, it would have been futile for plaintiffs to apply for approval of a 498-unit MHC.
We conclude that the trial court and the Court of Appeals majority (1) erred to the extent that they held that the township zoning ordinance was facially invalid because it unconstitutionally excluded a lawful use (MHC) and (2) erred by holding that the futility exception excused compliance with the finality rule and that the appropriate remedy was to enjoin the township from interfering with plaintiffs’ development of a 498-unit MHC. An ordinance is not facially invalid merely because it does not authorize every conceivable lawful use, nor does a zoning authority’s denial of an applica *561 tion for residential rezoning at a proposed lower-density level automatically establish that it would be futile for the property owner to apply for a higher-density use, such as MHC rezoning or a variance allowing MHC use. Because plaintiffs never submitted an application to the township for MHC rezoning or for a use variance that permitted construction of an MHC, plaintiffs’ claim was not ripe for judicial review.[4]
I. FACTS AND PROCEDURAL BACKGROUND
Plaintiffs Jeffrey Hendee, Michael Hendee, and Louann Demorest Hendee own a 144-acre tract of land, formerly used as a dairy farm, in defendant Putnam Township. The land is essentially undeveloped, consisting of flat lands, hills, wetlands, and woods. The land was and is currently zoned A-O, which permits development as a farm or 10-acre single-family homes. The parties stipulated that the surrounding property to the east and south is zoned for agricultural use, that the property to the west is zoned for agricultural and medium-acreage residential estate use, and that the property is bordered on the west by a paved road and on the south by a gravel road. The township has no public water or sanitary-sewer service.
Some years before the proceedings in this case, the Hendees had stopped using the land as a dairy farm because it was unprofitable. In 2002, they attempted to sell the land, intending to use the proceeds to fund their retirements, but they concluded that they could not get an acceptable price for the land because the A-0 zoning classification limited its development potential. Plaintiff Village Pointe Development LLC agreed to purchase *562 and develop the land, contingent on the property being rezoned from A-0 to R-l-B.
On August 29, 2002, the Hendees filed an application with the Putnam Township Planning Commission to rezone their land from A-0 to R-l-B. The township planning commission recommended denial of the rezoning application, but the Livingston County Planning Commission recommended approval with conditions, specifically, that cluster or PUD development be considered to protect the parcel’s wetlands.
On April 23, 2003, the Hendees filed an application with the township for approval of a 95-unit PUD and rezoning to R-l-B. The township planning commission recommended denial of the application, and in May 2003 the county planning commission also recommended denial.
Following these denial recommendations, the Putnam Township Board remanded the application to the township planning commission for specific findings of fact. The planning commission held a hearing and presented its findings supporting denial, supplemented by letters from the township’s community planner and consulting engineers, to the township board in December 2003. On December 17, 2003, the township board denied both the rezoning request and the application for the 95-unit PUD/R-l-B on the basis of the planning commission’s findings.
The Hendees next applied to the township zoning board of appeals (ZBA) for a use variance to permit development of up to 95 one-acre residential lots on their land. Following hearings in February and March 2004, the ZBA denied the Hendees’ variance request on March 22, 2004.
Although it is unclear when it occurred, at some point during the application process concerning the *563 95-unit PUD/R-l-B, the Hendees filed a new application to rezone the property to permit MHC development. The Hendees withdrew that application, however, after the township informed them that it would not process a new application for an MHC while the 95-unit PUD application was still pending.
On April 12, 2004, the Hendees, together with the proposed buyer/developer, Village Pointe, filed a complaint against the township, alleging that the refusal to rezone the property from A-0 zoning to allow MHC development deprived plaintiffs of equal protection and substantive due process and constituted an unconstitutional taking and further alleging that the township’s zoning was exclusionary, in violation of former MCL 125.297a,[5] because it excluded MHC zoning.
Importantly, plaintiffs abandoned the 95-unit PUD as “economically unfeasible.” Instead, they based their claim for injunctive relief prohibiting enforcement of the A-0 zoning of their property on their earlier (withdrawn) request to rezone the property for an MHC,[6] asking that the court enjoin the township from interfering with plaintiffs’ development of a 498-unit MHC. On May 5, 2006, after a nine-day bench trial during January and March 2006, the trial court found in plaintiffs’ favor on all claims and granted an injunction prohibiting the township from interfering with devel *564 opment of the MHC. The trial court also awarded costs and expert witness fees to plaintiffs.
The township appealed and, in an unpublished, split decision, the Court of Appeals affirmed the trial court’s judgment enjoining the township from enforcing its A-0 zoning and from interfering with plaintiffs’ MHC development.[7] The majority reversed in part with respect to the as-applied constitutional claims (equal protection, substantive due process, and taking). Although the majority ruled that the claims were subject to the rule of finality but should not have been dismissed on that ground under the futility exception to that rule, it also concluded that those claims failed on the merits because the township “was advancing a legitimate governmental interest in maintaining the A-0 classification,” it was “not acting arbitrarily or capriciously,” and “all avenues of use, and thus economic feasibility, were not explored and negated.”[8] The majority affirmed the trial court’s ruling on plaintiffs’ exclusionary zoning claim, however. The majority found it unnecessary to decide whether it was a facial claim that was not subject to the rule of finality. Instead, “assuming the contrary, the futility exception applied; the claim was ripe for suit.”[9] The majority implied that plaintiffs were free to pursue their exclusionary zoning claim because the ordinance unconstitutionally excluded a lawful use (MHC). The majority reasoned that, in light of the township’s denial of plaintiffs’ request for far less intensive residential rezoning (the PUD) and use variance applications, it would have been fruitless for plaintiffs to seek MHC rezoning or a variance permitting MHC use of the property at the much higher density they proposed. *565 Relying on Schwartz v City of Flint, 426 Mich 295, 329; 395 NW2d 678 (1986), the majority concluded that the use plaintiffs proposed was reasonable and affirmed the trial court’s order enjoining the township from interfering with it.[10] The majority also affirmed the award of costs and expert witness fees to plaintiffs.
Judge DONOFRIO concurred in part and dissented in part. He agreed that plaintiffs’ as-applied claims were not ripe, but also thought that the trial court’s ruling on the exclusionary zoning claim should be reversed because it was not ripe for judicial review and because plaintiffs had not established, pursuant to former MCL 125.297a, that a demonstrated need for MHCs existed in the township, a question that the majority had found unnecessary to decide because it believed the futility doctrine rendered such analysis unnecessary.
Defendant applied for leave to appeal, and we granted leave and requested that the parties brief the following issues:
(1) whether a rule of finality or ripeness applies to the plaintiffs’ exclusionary zoning claim, see Paragon Props Co v City of Novi, 452 Mich 568, 576 (1996); Warth v Seldin, 422 US 490, 508 n 18 [95 S Ct 2197; 45 L Ed 2d 343] (1975) (“[U]sually the focus should be on a particular project.”); (2) if so, whether the Court of Appeals majority properly held that the defendant township’s previous denials of the plaintiffs’ applications to rezone their property for less intensive uses excused the finality requirement under the futility doctrine; (3) whether the trial court erred in granting injunctive relief prohibiting the defendant township from interfering with the plaintiffs’ proposed use of their property for a manufactured housing community when the plaintiffs had never proposed that use to the township, see Schwartz v City of Flint, 426 Mich 295, 327-328 (1986); (4) whether a claim that a zoning ordi *566 nance unconstitutionally excludes a lawful use is properly analyzed without regard to whether a demonstrated need for the use exists, as suggested by the Court of Appeals’ reliance on Kropf v Sterling Hts, 391 Mich 139, 155-156 [215 NW2d 179] (1974), or whether the enactment of 1978 PA 637, MCL 125.297a (now recodified in nearly identical language as MCL 125.3207) superseded the analysis of Kropf on which the majority relied; and (5) whether the trial court abused its discretion in awarding the plaintiffs their costs and expert witness fees.[11]
II. STANDARDS OF REVIEW
This Court reviews de novo issues of law.[12] We review a trial court’s findings of for clear error.[13]
III. ANALYSIS
A. LEGISLATIVE ZONING POWER
The zoning of land is an exercise of a government’s police power.[14] For more than 80 years, courts have adhered to the analysis in Village of Euclid v Ambler Realty Co.[15] There, the United States Supreme Court recognized that the pressures of competing land uses require the segregation of incompatible uses, consistent with the public interest in protecting and preserving property values. In accordance with Euclid, various zoning acts, including the former Township Zoning Act, MCL 125.271 et seq., were adopted to establish procedures for Michigan governmental bodies to enact and enforce zoning ordinances.
*567 Pursuant to that statute, Putnam Township enacted a zoning ordinance and adopted a zoning map.[16] Legislative bodies such as the Putnam Township Board also have the authority to amend zoning maps by granting rezoning requests and special use permits. In addition, a landowner may seek a use variance to permit a use in a zoning district that otherwise would not be permitted.
B. PLAINTIFFS’ REZONING REQUEST
Plaintiffs’ land was zoned for agricultural use, which limited the development of single-family homes on plaintiffs’ property to 10-acre parcels. Accordingly, plaintiffs initially filed a request to rezone their property from A-0 to R-l-B. Upon the recommendation of the Livingston County Planning Commission, plaintiffs reformulated their request, seeking to proceed with a 95-unit PUD.
After the township denied plaintiffs’ request for a 95-unit PUD, plaintiffs properly sought administrative relief by requesting a use variance from the ZBA to permit the 95-unit PUD. The ZBA denied plaintiffs’ variance request. At that point, plaintiffs had exhausted their administrative review obligations and could have sought judicial relief under the ripeness rule of Paragon Props Co v City of Novi, 452 Mich 568; 550 NW2d 772 (1996), as no other means of administrative appeal or review was available to plaintiffs to permit development of a 95-unit PUD.
However, after the township reached its final decision denying the 95-unit PUD, plaintiffs did not seek judicial review of the ZBA’s denial of their request for a variance to develop a 95-unit PUD. Instead, they filed a *568 complaint in the circuit court alleging that the township had wrongfully engaged in exclusionary zoning by enacting an ordinance that did not, on its face, permit development of a 498-unit MHC on plaintiffs’ property.[17] Thus, the township was never afforded an opportunity to review a rezoning request for a 498-unit MHC because the only applications before the township were the requests to rezone the property for residential development or development of a 95-unit PUD or for a use variance that would allow residential development.
*569 The township responded that it had reached a final decision only with respect to the rezoning request before it: the request for the 95-unit PUD. The township had no rezoning request pertaining to development if a 498-unit MHC upon which to make any decision, much less a final decision appealable in the circuit court. Accordingly, the trial court had no authority to review plaintiffs’ complaint alleging that the township’s ordinance was a facially invalid exercise in exclusionary zoning because the ordinance did not permit plaintiffs to develop an MHC.
We conclude that the trial court erred by deciding plaintiffs’ exclusionary zoning claim because plaintiffs did not first submit a request to rezone their property for MHC use. The township could not even consider, much less render a final decision with regard to, the proposed 498-unit MHC use because it had no such application before it.
C. PARAGON PROPS CO v CITY OF NOVI
Under Paragon, a plaintiffs complaint is not ripe for judicial review until the zoning authority has reached a final decision and the plaintiff has exhausted every administrative appeal. Without a final decision from the zoning authority, a plaintiff cannot demonstrate that the zoning ordinance or decision specifically injured the plaintiff.
In Paragon, this Court addressed whether the Novi City Council’s denial of plaintiff Paragon Properties Company’s request to rezone its property was a final decision appealable in the circuit court. Paragon owned a 75-acre vacant tract of land that was zoned for large-lot, single-family residential use. The property in Novi, Michigan, abutted an active gravel pit operation to the west, and the land north of the property was *570 zoned for industrial use. To the east of the Paragon tract, the undeveloped property was zoned for residential use, and to the west, the property was developed for mobile-home use.
Paragon applied to the planning board of the city of Novi to rezone the property from single-family residential to mobile-home use. Both the planning board and the Novi City Council denied Paragon’s request. Paragon then filed a complaint in the Oakland Circuit Court, alleging that the property had no economic value as zoned for residential use because of adjacent industrial uses and poor drainage conditions. Paragon argued that the highest and best use of the property would be for mobile-home use and thus the city’s denial of its rezoning request unconstitutionally deprived Paragon of its property, in violation of the Due Process Clause.
The city moved for summary disposition, arguing that because Paragon had failed to first seek a úse variance, Paragon had not obtained a final decision regarding the permissible uses of the property under the Novi ordinance. The trial court denied the motion, concluding that Paragon had exhausted all its administrative remedies because the case concerned a request for rezoning, not a request for a use variance. Thereafter, the trial court held that the zoning ordinance as applied to Paragon’s property was an unconstitutional taking and entered a judgment against the city.[18]
*571 On appeal, the Court of Appeals reversed the trial court, holding that Paragon’s claim was not ripe for judicial review because Paragon had neither sought a variance nor brought an inverse condemnation action.[19]
Citing the United States Supreme Court’s opinion in Williamson Co Regional Planning Comm v Hamilton Bank of Johnson City,[20] as well as this Court’s express adoption of Williamson in Electro-Tech, Inc v H F Campbell Co [21] we observed in Paragon the importance of requiring finality in land-use-regulation disputes.[22] In Williamson, a property owner received temporary approval from the planning commission to develop a residential subdivision. When the commission subsequently amended its ordinance, thereby denying the *572 property owner his preferred use, the owner sued in federal district court, alleging that the ordinance amounted to an unconstitutional taking of his property. The United States Supreme Court disagreed, holding that because the landowner had failed to first seek alternative relief by requesting a land use variance, the landowner’s claim was not ripe for judicial review.[23]
Consistently with Williamson, we held in Paragon that judicial review in zoning cases is not available until the zoning authority has rendered a final decision.[24] Thus, because Paragon had not first sought a use variance, it had not established that its claim was ripe for judicial review:
The City of Novi’s denial of Paragon’s rezoning request is not a final decision because, absent a request for a variance, there is no information regarding the potential uses of the property that might have been permitted, nor, therefore, is there information regarding the extent of the injury Paragon may have suffered as a result of the ordinance. While the city council’s denial of rezoning is certainly a decision, it is not a final decision under ElectroTech because had Paragon petitioned for a land use variance, Paragon might have been eligible for alternative relief from the provisions of the ordinance. [Paragon, 452 Mich at 580.]
D. APPLICATION OF PARAGON
As there was no decision regarding plaintiffs’ proposed use of the property for a 498-unit MHC, plaintiffs’ complaint did not allege that any final decision by the township precluded plaintiffs from making MHC use of their property. MHC use was contemplated by the township’s master plan, though not yet specifically *573 zoned for in the township. Plaintiffs’ failure to seek rezoning of their property for MHC development denied the township any opportunity to assess plaintiffs’ MHC proposal and arrive at a definitive decision from which the court could determine whether plaintiffs had sustained any actual or concrete injury. Consequently, plaintiffs have not exhausted their administrative remedies, the township has rendered no final decision, and plaintiffs’ exclusionary zoning claim is not ripe for judicial review. As this case can be resolved on this narrower ground, we need not and do not address the substance of plaintiffs’ exclusionary zoning claim.
Whereas the Paragon Court held that Paragon’s failure to obtain a final decision from the Novi Zoning Board of Appeals precluded Paragon from seeking judicial review, in the case now before us, plaintiffs’ claim for relief is not only not ripe for review, it is nonexistent. Simply put, plaintiffs’ failure to submit an application to rezone its property to permit an MHC effectively denied the township any opportunity to consider whether that alternative use of the land would be acceptable. As Judge DONOFRIO observed, it also deprived the township of any opportunity to consider whether its ordinance failed to accommodate a lawful use for which a demonstrated need existed within either the township or the surrounding area.[25] In the absence *574 of an express prohibition of a lawful land use within the ordinance itself,[26] the issue of the ordinance’s exclusionary effect, or the absence of it, will not be ripe for consideration by the courts until the township has been afforded the opportunity to make that determination.
In response, plaintiffs argue that it would have been futile to seek permission to develop a 498-unit MHC because the township had already denied its rezoning request for a less intensive use — the 95-unit PUD. The Court of Appeals majority agreed, noting that under the futility doctrine, a court will not require parties to exhaust all administrative remedies.[27] If a plaintiff can show that it would be futile to first exhaust all administrative appeals, because it can be established that the zoning authority’s decision would remain the same on appeal, courts have held that the futility doctrine excuses the requirement of ripeness.
As the United States Court of Appeals for the Sixth Circuit explained in Bannum, Inc v City of Louisville, 958 F2d 1354, 1362-1363 (CA 6, 1992):
We do not want to encourage litigation that is likely to be solved by further administrative action and we do not *575 want to put barriers to litigation in front of litigants when it is obvious that the process down the administrative road would be a waste of time and money.. . .
. . . [However,] [f]or the exception to be available to an aggrieved landowner, the landowner must have submitted at least one “meaningful application” for a variance from the challenged zoning regulations. Kinzli v. City of Santa Cruz, 818 F.2d 1449, 1454-55 (9th Cir. 1987), cert. denied, 484 U.S. 1043, 108 S.Ct.775, 98 L.Ed.2d 861(1988).
Because plaintiffs have not even made at least one unsuccessful meaningful application for a rezoning request to change the zoning from AO to MHC, so as to permit their proposed 498-unit MHC, plaintiffs have not established that the futility doctrine applies.
Relying on the discussion of the requirement of finality in the context of a taking claim in Paragon, 452 Mich at 578-579, plaintiffs, the trial court, and the Court of Appeals majority appear to have proceeded on the assumption that Paragon’s ripeness and finality rules can never apply to an ostensibly “facial” attack on a zoning ordinance, i.e., one premised on an exclusionary zoning theory. They are mistaken, as even a cursory examination of the statute on which the trial court relied reveals. Precisely because the statute prevents a “zoning ordinance or zoning decision” from “havfing] the effect of totally prohibiting the establishment of a land use within a township in the presence of a demonstrated need for that land use within either the township or surrounding area within the state,” former MCL 125.297a (emphasis added), the zoning authority must first be afforded the opportunities (1) to determine the effect of its ordinance in fight of evidence demonstrating a need for the proposed land use and (2) to render a zoning decision based on that evidence before a facial exclusionaiy zoning claim can become ripe for judicial review.
*576 As the United States Supreme Court observed in Warth v Seldin, 422 US 490, 508; 95 S Ct 2197; 45 L Ed 2d 343 (1975):
We hold only that a plaintiff who seeks to challenge exclusionary zoning practices must allege specific, concrete facts demonstrating that the challenged practices harm him, and that he personally would benefit in a tangible way from the court’s intervention. Absent the necessary allegations of demonstrable, particularized injury, there can be no confidence of “a real need to exercise the power of judicial review” or that relief can be framed “no broader than required by the precise facts to which the courts ruling would be applied.” Schlesinger v. Reservists to Stop the War, 418 U.S. [208], at 221-222 [94 S Ct 2925; 41 L Ed 2d 706 (1974)].
In Warth, the plaintiffs were individuals and organizations residing in Rochester, New York. They brought a class action against the town of Penfield, New York, and its officials, alleging that the town’s zoning ordinance unconstitutionally excluded low- and moderate-income persons from living in Penfield. The federal district court dismissed the plaintiffs’ suit, and the United States Court of Appeals for the Second Circuit affirmed. On appeal, the United States Supreme Court again affirmed the decision after a majority of the justices concluded that the plaintiffs lacked standing to sue because none of the individual plaintiffs could allege a particular injury to themselves. Nor did the plaintiffs demonstrate that judicial intervention could benefit them in a tangible way. In this respect, the Warth Court held that the plaintiffs’ facial claim alleging exclusionary zoning was not ripe for judicial review.
As Judge DONOFRIO observed in dissent in this case, every use is not appropriate to every community, and Mackinac Island’s zoning (for example) is not necessarily unconstitutionally (or, under a statute like former *577 MCL 125.297a, unlawfully) exclusionary because it does not include industrial use classifications or zone particular property for such uses.[28]
The township denied the only applications that plaintiffs submitted, requests to rezone the property from A-0 to R-l-B to permit residential development (or, alternatively, to permit a 95-unit PUD) or for a use variance. Plaintiffs’ decision not to pursue an application for rezoning from A-0 to MHC effectively barred plaintiffs from seeking judicial review of that question. Without such an application, and a final decision by the township, it is impossible to say whether (1) the township would permit such a use of plaintiffs’ property and (2) whether a denial of such a request would be reasonable in light of the township’s efforts to channel future MHC development to its border with the village of Pinckney, which has the only public water and sewer systems in the area.[29] We agree with the partial dissent of Judge DONOFRIO:
After reviewing the record, I conclude that plaintiffs cannot show that they sought alternative uses of the *578 property and were denied, or that they applied for the minimum variance necessary to place the land in productive economic use within the zoning classification. Plaintiffs did not seek a decision from the appropriate administrative body regarding either a rezoning application or a variance request regarding a 498-unit MHC and instead sought premature relief from the judiciary by filing the instant lawsuit.[30]
IV CONCLUSION
We would hold that the trial court and the Court of Appeals erred by reaching the question whether the township zoning ordinance was unconstitutional and thus also erred by holding that plaintiffs were entitled to an order enjoining the township from interfering with plaintiffs’ development of a 498-unit MHC. Plaintiffs never submitted an application for rezoning or a variance to construct an MHC. Thus, plaintiffs’ claim was not ripe for judicial review.
Because plaintiffs’ claim was not ripe for judicial review, the trial court had no basis to enjoin the township from enforcing its zoning ordinance, nor should the court have awarded plaintiffs their costs and expert witness fees.
We would reverse the judgment of the Court of Appeals and remand this case for entry of a dismissal order consistent with this opinion.
Hathaway, J., concurred with Weaver, J.

 The majority described it as a “facial challenge with ‘as applied’ attributes or features, considering that execution of the ordinance scheme with respect to a recognized yet unapplied MHC district can go the issue of whether the township engaged in exclusionary zoning.” Hendee v Putnam Twp, unpublished opinion per curiam of the Court of Appeals, issued August 26, 2008 (Docket Nos. 270594 and 275469), p 6 n 6.

 The partial dissent would have held that plaintiffs’ claim was not ripe for judicial review. Id., unpub op at 1 (Donofrio, EJ., concurring in part and dissenting in part).

 Id., unpub op at 5-6 (majority opinion).

 Paragon Props Co v City of Novi, 452 Mich 568, 576; 550 NW2d 772 (1996).

 MCL 125.297a was part of the former Township Zoning Act. 2006 PA 110 repealed that act and other zoning statutes and replaced them with the Michigan Zoning Enabling Act, MCL 125.3101 et seq., effective July 1,2006. MCL 125.3702(1). The Township Zoning Act, however, applies to this case. MCL 125.3702(2).

 Again, we note that plaintiffs never re-presented their application for a 498-unit MHC to the township for review after the township informed plaintiffs that it could not consider a new application while their 95-unit PUD application was still pending.

 Hendee, unpub op at 23-24.

 Id. at 23.

 Id.

 Id. at 18-20, 23-24.

 Hendee v Putnam, Twp, 483 Mich 983 (2009).

 See Odom v Wayne Co, 482 Mich 459, 467; 760 NW2d 217 (2008).

 Henry v Dow Chem Co, 484 Mich 483, 495; 772 NW2d 301 (2009).

 See Paragon, 452 Mich at 577.

 Village of Euclid v Ambler Realty Co, 272 US 365; 47 S Ct 114; 71 L Ed 303 (1926).

 Former MCL 125.281; see Paragon, 452 Mich at 574; cf. MCL 125.3401.

 A facial challenge is one in which the complainant alleges that the very existence of a zoning ordinance or decision adversely affects and infringes upon the property values of the rights of all landowners within the governed community. Paragon, 452 Mich at 576. Specifically, plaintiffs alleged that because there was no provision for MHC zoning in the township’s zoning ordinance, the ordinance wrongfully precluded all landowners from using their land for MHCs. Consequently, in making a facial challenge, plaintiffs must establish that there is no set of circumstances in which the ordinance would be valid. Warshak v United States, 532 F3d 521, 529 (CA 6, 2008). In this regard, plaintiffs sought to frame their complaint as a facial claim challenging the constitutionality of the township’s ordinance on the basis that the ordinance wrongfully denies all property owners the right to develop their land for MHC use and is therefore exclusionary.
An as-applied challenge is one in which the complainant alleges that the individual landowner suffers from a specific and identifiable injury as a result of the township’s zoning ordinance or decision. Paragon, 452 Mich 576. An as-applied challenge is always subject to the rule of finality — the requirement that the governing body has made a definitive decision such that an identifiable injury can be shown. An as-applied challenge is not ripe for judicial review until the complainant can establish that a final decision injures a complainant. Id. at 576-577. By contrast, the rule of finality does not apply to true facial challenges because such challenges attack the very existence of the ordinance or decision. Id. at 577. We agree with the Court of Appeals majority that this case “reflects a facial challenge with ‘as applied’ attributes or features, considering that execution of the ordinance scheme with respect to a recognized yet unapplied MHC district can go to the issue of whether the township engaged in exclusionary zoning.” Hendee, unpub op at 6 n 6. We disagree, however, with its conclusion that, under these circumstances, plaintiffs were excused from complying with the finaliiy requirement.

 As noted earlier, we stated in Paragon that as-applied challenges are distinct from facial challenges:
Although the police power allows the government to regulate land use, the Fifth Amendment requires that compensation be paid if a government regulation unreasonably shifts social costs to an individual or individuals. Village of Euclid, [272 US] at 387. A claim for compensation may allege that an ordinance is confiscatory “as applied” or “on its face.” A facial challenge alleges that the mere existence and threatened enforcement of the ordinance *571 materially and adversely affects values and curtails opportunities of all property regulated in the market. Id at 395. An “as applied” challenge alleges a present infringement or denial of a specific right or of a particular injury in process of actual execution. Id.
A challenge to the validity of a zoning ordinance “as applied,” whether analyzed under 42 USC 1983 as a denial of equal protection, as a deprivation of due process under the Fourteenth Amendment, or as a taking under the Just Compensation Clause of the Fifth Amendment, is subject to the rule of finality. [Paragon, 452 Mich at 576, citing Lake Angelo Assoc v White Lake Twp, 198 Mich App 65, 70; 498 NW2d 1 (1993), citing Williamson Co Regional Planning Comm v Hamilton Bank of Johnson City, 473 US 172, 186; 105 S Ct 3108; 87 L Ed 2d 126 (1985).]
As discussed, however, it does not follow that every ostensibly “facial” challenge is exempt from the rule of finality. Rather the court must look to the substance of the claim and the factual matrix in which it is presented to determine whether the claim is one that is exempt from Paragon’s rule of finality.

 Paragon Props Co v City of Novi, 206 Mich App 74, 76; 520 NW2d 344 (1994).

 Williamson, n 18 supra.

 Electro-Tech, Inc v H F Campbell Co, 433 Mich 57, 81-91; 445 NW2d 61 (1989).

 Paragon, 452 Mich at 577-578.

 Williamson, 473 US at 193-194.

 Paragon, 452 Mich at 576-577.

 Hendee, unpub op at 8 (DONOFRIO, EJ., concurring in part and dissenting in part). See former MCL 125.297a, which provided:
A zoning ordinance or zoning decision shall not have the effect of totally prohibiting the establishment of a land use within a township in the presence of a demonstrated need for that land use within either the township or surrounding area within the state, unless there is no location within the township where the use may be appropriately located, or the use is unlawful.
A comparable provision, MCL 125.3207, appears in the Michigan Zoning Enabling Act.

 As previously noted, the township’s master plan contemplates MHC use. The master plan currently projects that MHCs will be located on land adjacent to the village of Pinckney, which has the only available public water and sewer. Plaintiffs alleged that the land designated was unsuitable for MHC use, but, by failing to apply for MHC rezoning, they denied the township any opportunity to consider that claim.

 The majority observed:
[T]his Court has stated that it will not require parties to undertake vain and useless acts, and where it is clear that further administrative proceedings would be an exercise in futility and nothing more than a formad step on the way to the courthouse, resort to the administrative body is not mandated. L & L Wine & Liquor Corp v Liquor Control Comm, 274 Mich App 354, 358; 733 NW 2d 107 (2007); Turner v Lansing Twp, 108 Mich App 103, 108; 310 NW2d 287 (1981). [Hendee, unpub op at 6-7 n 7.]

 Hendee, unpub op at 9 n 3 (Donofrio, EJ., concurring in part and dissenting in part).

 Under Schwartz, 426 Mich at 325-326, the trial court had the power to grant injunctive relief permitting an MHC use only if the ordinance’s classification of the property was unconstitutional. Similarly, we would hold that in the absence of an expressed prohibition of a lawful use in the zoning ordinance or a prohibition based on a suspect classification, an exclusionary zoning claim is not ripe for judicial review if the zoning authority has not first been afforded an opportunity to determine whether its ordinance has
the effect of totally prohibiting the establishment of a land use within a township in the presence of a demonstrated need for that land use within either the township or surrounding area with the state, unless there is no location within the township where the use may be appropriately located, or the use is unlawful. [Former MCL 125.297a.]

 Hendee, unpub op at 5-6 (Donofrio, EJ., concurring in part and dissenting in part).